53 F.3d 332
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Robert L. SMITH, et al., Plaintiffs-Appellants,
v.
Christine BRADLEY, Commissioner of the Tennessee Department
of Corrections, et al., Defendants-Appellees.
 No. 94-5351.
 United States Court of Appeals, Sixth Circuit.
 April 25, 1995.
 
 Before: KEITH and MARTIN, Circuit Judges; and SPIEGEL, District Judge.*
 PER CURIAM.
 
 
 1
 Challenging the installation of a new telephone system at the Turney Center Correctional Facility in Only, Tennessee, a group of inmates--Robert L. Smith,[1] George Ingle, and Willie Hurd--brought suit under 42 U.S.C. Sec. 1983 against Christine Bradley, the Commissioner of the Tennessee Department of Corrections (TDOC), and five TDOC employees. The district court granted summary judgment for Bradley and the other defendants. Finding that no genuine issue of material fact exists and that the defendants are entitled to judgment as a matter of law, we affirm.
 
 
 2
 In early 1993, a new telephone system, the inmate telephone system (ITS), was installed in Tennessee prisons including Turney Center. This system was installed in response to complaints about the old system by both inmates and persons outside prison. According to TDOC employee George Jungmichel, it was also a means of preventing inmates' use of prison telephones for harassment, fraud, and other illegal purposes. Under the new telephone system, inmates are required to list up to ten numbers which they may call; they may change this list every three months and add a new number at any time in an emergency. Rather than making collect calls as they did prior to the installation of ITS, inmates make calls directly and their cost is then deducted from the inmate's telephone trust account. Also, under the new system, the recipient of a harassing telephone call is able to terminate the call and have the number removed from the inmate's telephone list. With the exception of calls to attorneys, inmates are required to consent to the recording and monitoring of their telephone calls to the numbers on their list. If a problem occurs in the new system that prevents it from working properly, an inmate making a call hears a recorded warning that all calls must be made collect and will be recorded, including calls to attorneys. In such a case, an inmate may use a phone not on the system to make legal calls without their being recorded.
 
 
 3
 Smith filed suit seeking injunctive relief on February 24, 1993, claiming that the new telephone system violated inmates' rights under the First, Fourth, Eighth and Fourteenth Amendments. Additionally, Smith claimed that the new system violated provisions of the Federal Wiretap Act, 18 U.S.C. Secs. 2511 and 2516. That same day, Smith also filed a motion for a temporary restraining order, which was later denied because it did not contain a certificate of service. On March 9, 1993, Smith filed a supplemental complaint seeking monetary damages and alleging that the defendants had retaliated against Robert Smith by confiscating his personal property, a micro-cassette recorder. The district court concluded that this claim of retaliation was frivolous. After an extension of time was granted, Bradley opposed Smith's motion for injunctive relief and moved for summary judgment and/or dismissal on May 19, 1993. In support of this motion, Bradley filed the affidavits of William Peebles, David Westbrooks and George Jungmichel.
 
 
 4
 On June 25, 1993, pursuant to 28 U.S.C. Sec. 636(b), the district court referred this case to a magistrate for consideration. The magistrate ordered Smith to file any affidavits in opposition to Bradley's motion for summary judgment by December 10, 1993. On that day, Smith filed a cross motion for summary judgment and responded to Bradley's motion for summary judgment. However, Smith filed no affidavits, either in support of his own motion for summary judgment or in opposition to Bradley's motion. On December 22, the magistrate recommended granting Bradley's motion for summary judgment. Smith objected to the magistrate's report and recommendation on December 31. Nevertheless, the district court found that the magistrate's conclusions were correct and entered an order granting summary judgment for Bradley and the other defendants on January 28, 1994. Smith and the other inmates filed a notice of appeal from that order on February 28.
 
 
 5
 Smith makes several arguments on appeal: that the appellants are entitled to judgment as a matter of law because of the violation of TDOC policies; that inmates have a clear expectation of privacy while using the telephone; that TDOC policies create a liberty interest in use of the telephone by inmates; that the Federal Wiretap Act applies to monitoring of telephone conversations in prison; that inmates can demonstrate irreparable harm by this monitoring and recording; that the consent form was signed by inmates under duress; that the appellees retaliated against Smith, violated his right of access to the courts, and must return his personal property; and that inmates have been denied their "mental tranquility" and "even handed justice" in matters of discovery.
 
 
 6
 This court reviews a grant of summary judgment de novo. Moore v. Holbrook, 2 F.3d 697, 698 (6th Cir. 1993). All evidence is viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
 
 
 7
 Once the moving party presents sufficient evidence to support its motion for summary judgment, the "nonmoving party is not entitled to a trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." Gregg v. Allen-Bradley Co., 801 F.2d 859, 861 (6th Cir. 1986). Here, Smith offered no evidence beyond the allegations to support the complaint. He failed to file any affidavits in opposition to Bradley's motion for summary judgment, relying instead on a memorandum in support of his own motion for summary judgment. Smith has neither "adduced more than a scintilla of evidence" nor presented any affirmative evidence to defeat Bradley's summary judgment motion. Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). Moreover, Bradley is entitled to judgment as a matter of law.
 
 
 8
 Although "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution," Turner v. Safley, 482 U.S. 78, 84 (1987), the installation of ITS does not violate inmates' Constitutional rights. The Supreme Court has noted a hesitance to interfere with problems of prison administration. Especially "[w]here a state penal system is involved, federal courts have ... additional reason to accord deference to the appropriate prison authorities." Id. at 85. Accordingly, we shall defer to prison officials' decisions when they are fair, equitable, and uniformly applied to inmates. In Turner, a case involving the regulation of inmate correspondence, the court established a standard for determining the constitutionality of prison regulations: "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Id. at 89. Here, because Smith filed no counter-affidavits, it is uncontested that the TDOC policy regarding the monitoring of telephone calls is a necessary security measure to prevent inmates' use of telephones for harassment, fraud and other illegal purposes.
 
 
 9
 We recently addressed First Amendment arguments similar to those raised by Smith in the context of a new telephone system installed in federal prisons. Washington v. Reno, 35 F.3d 1093 (6th Cir. 1994). In Washington, we noted that "a prisoner's right to telephone access is 'subject to rational limitations in the face of legitimate security interests of the penal institution."' Id. at 1100 (quoting Strandberg v. City of Helena, 791 F.2d 744, 747 (9th Cir. 1986)). Further, the "exact nature of telephone service to be provided to inmates is generally to be determined by prison administrators, subject to court scrutiny for unreasonable restrictions." Id. (quoting Fillmore v. Ordonez, 829 F. Supp. 1544, 1563-64 (D. Kan. 1993), aff'd, 17 F.3d 1436 (10th Cir. 1994)). In Washington, the district court's prior constraint concerns were alleviated when changes were effected allowing inmates to list up to thirty phone numbers on their call lists. Here, although inmates are only allowed ten numbers at a time on their list, they may revise that list every three months and add a new number at any time in an emergency. Furthermore, in Washington, we noted that merely replacing a collect-call telephone system with a direct-dial system does not alone implicate inmates' First Amendment rights. Id.
 
 
 10
 As to Smith's Fourth Amendment claims, it is clear that prison inmates have no reasonable expectation of privacy. Hudson v. Palmer, 468 U.S. 517, 527-28 (1984). In this regard, the Second Circuit has specifically rejected a Fourth Amendment challenge to the monitoring and recording of inmates' telephone conversations. United States v. Amen, 831 F.2d 373, 379 (2d Cir. 1987). "If security concerns can justify strip and body-cavity searches, and wholly random cell searches, then surely it is reasonable to monitor prisoners' telephone conversations, particularly where they are told that the conversations are being monitored." Id. (citations omitted). In Amen, the court found that although Title III of the Omnibus Crime Control and Safe Streets Act (The Federal Wiretap Act), 18 U.S.C. Sec. 2510 et seq., applied to prison monitoring, inmates consented to the monitoring by using phones when they were on notice of the policy. Id. at 378-79. Such is exactly the case here, where inmates not only sign consent forms, but are notified of the TDOC monitoring policy by signs and recorded warnings.
 
 
 11
 Smith also asserts that TDOC policies create a liberty interest in telephone calls protected by the Fourteenth Amendment. Under prior TDOC policies, inmate calls were only monitored in certain circumstances. Now, however, those policies have changed with no such restrictions except for legal calls. Although we have recognized that prison regulations may create an entitlement under the due process clause, see e.g., Long v. Norris, 929 F.2d 1111, 1115 (6th Cir. 1991) (finding a liberty interest in visitation under Tennessee prison regulations), no protected liberty interest exists under present TDOC policies. See Right v. Trammel, 810 F.2d 589, 591 (6th Cir. 1987) (holding that amending a rule may eliminate a constitutionally-protected liberty interest created by the rule).
 
 
 12
 Finally, as to Smith's claim that his personal property was seized in retaliation for his exercising his right of access to the courts, "[a] prisoner using prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994). Smith contends that his possession of a second tape recorder was within TDOC policies when he acquired it, but acknowledges that the policy changed when prisoners were transferred from the main prison to newer facilities. Under current TDOC policy 504.01, inmates are limited to one tape recorder. Smith has failed to establish that the confiscation of his micro-cassette recorder either violated a clearly established constitutional right or was done in retaliation for his filing suit. Furthermore, we are unable to conclude that this action denied Smith meaningful access to the courts. Bounds v. Smith, 430 U.S. 817, 821 (1977).
 
 
 13
 For the foregoing reasons, we AFFIRM the district court's grant of summary judgment for the defendants.
 
 
 
 *
 The Honorable S. Arthur Spiegel, United States District Judge for the Southern District of Ohio, sitting by designation
 
 
 [1]
 Plaintiffs-Appellants Robert L. Smith, George Ingle, and Willie Hurd, all prisoners at Turney Center, a Tennessee state correctional facility, will be collectively referred to in this opinion as Smith