87 F.3d 1326
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Kevin WOODRUFF, Plaintiff-Appellant,
v.
J.J. MACHADO, Corrections Officer; R.R. Lowden, Lieutenant;
Gatto, Sergeant; Atwell, Correctional Officer; Carson,
Correctional Officer; Bowman, Correctional Officer and
Alvarez, Defendants-Appellees.
 No. 95-15613.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 11, 1996.*
Decided June 19, 1996.
 
 Before: CANBY, NOONAN, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Kevin Woodruff, a federal prisoner, appeals pro se the district court's grant of summary judgment in favor of defendant prison officials in his 42 U.S.C. § 1983 action. Woodruff contends that prison officials: (1) violated his Eighth Amendment rights by using excessive force and denying him access to medical treatment; (2) violated his due process rights on several occasions; (3) violated his First Amendment rights by retaliating against him for filing various appeals; and (4) denied him access to the courts. We have jurisdiction under 28 U.S.C. § 1291. We review de novo, Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, 116 S.Ct. 1261 (1996), and affirm in part, reverse in part, and remand.
 
 
 3
 Summary judgment is appropriate if we determine, viewing the evidence in the light most favorable to Woodruff, that no genuine issue of material fact exists and that the district court correctly applied the relevant substantive law. Id. We must not weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial. Jesinger v. Nevada Federal Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994).
 
 I. Eighth Amendment Claims
 A. Excessive Force
 
 4
 Woodruff contends that Officer Machado used excessive force when he slammed Woodruff into a wall and twisted his arm in an attempt to conduct a body search. Woodruff also claims that Officers Bowman and Carson used excessive force when they placed him in handcuffs, conducted a pat-down search, and placed him in a holding cell for two hours.
 
 
 5
 The core inquiry in determining whether prison officials used excessive physical force in violation of the Eighth Amendment, is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Hudson v. McMillan, 503 U.S. 1, 7 (1992). To determine if the use of force was wanton and unnecessary, we must examine the necessity of force, the relationship between necessity and amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of the forceful response. Id.
 
 
 6
 Here, it is undisputed that Machado ordered Woodruff to place his hands on the wall for a clothed body search. Woodruff claims that Machado slammed him into the wall while he attempted to comply with the order. Machado argues that Woodruff turned toward him in a threatening manner, instead of complying with the order. In response, Machado grabbed Woodruff by the back of his arms and put Woodruff's hands on the wall.
 
 
 7
 On a separate occasion, Officers Bowman and Carson handcuffed Woodruff and placed him in a holding cell, after Woodruff failed to pick up a food tray. Woodruff argues that handcuffing and transporting him to a holding cell was excessive because a shoulder injury prevented him from complying with the order. Officers Bowman and Carson argue that they handcuffed Woodruff because he threw the tray three to four feet across his cell and became belligerent when ordered to pick it up.
 
 
 8
 Officers Machado, Bowman, and Carson support their motion for summary judgment with affidavits containing factual statements that the use of force was justified and that no more force than necessary was used. Although Woodruff did not submit any affidavits in response, he produced sufficient evidence through testimony, affidavits, and personal letters filed with his initial complaint, to raise an Eighth Amendment claim of excessive force.
 
 
 9
 Because a question exists as to whether the amount of force used during the first incident was necessary and appropriate for the degree of threat perceived by Machado, Hudson, 503 U.S. at 7, and because it is unclear whether force was applied in a good faith effort to maintain or restore discipline, id., summary judgment for Machado was inappropriate on Woodruff's excessive force claim. Warren, 58 F.3d at 441.
 
 B. Access to Medical Care
 
 10
 Woodruff also claims that Officers Bowman and Carson showed deliberate indifference to his shoulder and back injuries when they placed him in handcuffs after the food tray incident.
 
 
 11
 To state a constitutional claim for deliberate indifference to serious medical needs, the prisoner must first demonstrate the existence of a serious medical condition of which the prison officials should have been aware. See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1992). Prison officials may manifest a deliberate indifference to serious medical needs when they "deny, delay or intentionally interfere with medical treatment." McGukin, 974 F.2d at 1059. Indications that a prisoner is in serious need of medical treatment include having an injury or medical condition that: (1) a reasonable doctor or patient would find important and worthy of comment or treatment; (2) significantly affects daily activities; or (3) involves chronic or substantial pain. Id.
 
 
 12
 Although Woodruff claims that he was wearing a neck brace and told Bowman and Carson that shoulder pain caused his behavior, there is no evidence that Woodruff asked to see a doctor while in the restraints, the holding cell, or upon release from the holding cell. Since Woodruff cannot show that Bowman and Carson denied, delayed, or intentionally interfered with medical treatment, the district court did not err in granting summary judgment on this issue. See McGukin, 974 F.2d at 1059.
 
 II. Due Process Claims
 
 13
 Woodruff claims that prison officials violated his due process rights by asking him to submit to a polygraph test, filing an improper disciplinary report, denying him the right to call witnesses during a disciplinary hearing, imposing excessive punishment upon finding him guilty of a disciplinary violation, housing him at the wrong custody level, and failing to adequately train subordinates.
 
 
 14
 A prisoner has no federal or state protected liberty interest in due process when his sentence has not been increased and the sanction imposed is not "atypical and significant" in relation to the ordinary incidents of prison life. See Sandin v. Conner, 115 S.Ct. 2293, 2300-02 (1995).
 
 
 15
 Woodruff argues that he was excessively punished when Officer Lowden found him guilty of filing a false allegation against Officer Machado. Woodruff's punishment consisted of confinement to quarters for ten days and forty hours of extra duty. The punishment did not increase his term of imprisonment.[1] Id. Because Woodruff did not experience an atypical or significant harm or deprivation at the hands of various prison officials, his due process claims fail. Id.
 
 III. First Amendment Claims
 A. Retaliation
 
 16
 Woodruff contends that prison officials Lowden and Gatto violated the Double Jeopardy Clause, denied him discovery during a disciplinary proceeding, and failed to provide evidentiary support for their finding of guilt. We decline to review these issues because Woodruff raises claims against Lowden and Gatto for the first time on appeal. Hawkins v. Risley, 984 F.2d 321, 323 (9th Cir.1993) (per curiam).
 
 
 17
 He also claims that officers Atwell and Alvarez violated his First Amendment rights to file complaints and appeals by delaying delivery of a food package and searching his cell.
 
 
 18
 In order to succeed on a § 1983 retaliation claim, a prisoner must demonstrate that: (1) prison officials retaliated against him for exercising his constitutional rights; and (2) the retaliatory action did not advance legitimate penological goals. Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir.1994) (per curiam). If the prisoner meets his burden, the prison officials must establish that they would have reached the same decision even in the absence of protected conduct. Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir.1989). Nevertheless, we will " 'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir.1995) (quoting Sandin, 115 S.Ct. at 2299).
 
 
 19
 Woodruff asserts that Officer Atwell delayed delivery of his food package as a harassment tactic for filing a complaint against Bowman and Carson. Atwell argues that delivery of Woodruff's food package was delayed because it was improperly addressed and Woodruff was not authorized to receive the package while on disciplinary detention status. Woodruff does not offer any evidence to substantiate his claim. Additionally, Woodruff contends that Officer Alvarez conducted cell searches in an effort to prevent him from filing appeals, and to harass him for appealing several CDC violations. Again, Woodruff offers no substantiating evidence. Alvarez searched Woodruff's cell once, approximately one month after the 602 appeals were filed. There is no other evidence of cell searches conducted by Alvarez.
 
 
 20
 Because Woodruff did not demonstrate that the prison officials retaliated against him for exercising his constitutional rights, without any legitimate penological objective, his retaliation claim fails. See Barnett, 31 F.3d at 815-16.
 
 B. Denial of Access to Courts
 
 21
 Woodruff claims that he was denied access to the courts when Officer Alvarez confiscated a dictionary and legal documents during a cell search. If an inmate's claims do not involve the denial of access to adequate law libraries or legal assistance, the inmate must allege an actual injury or a specific instance in which the inmate actually was denied court access. Sands v. Lewis, 886 F.2d 1166, 1171 (9th Cir.1989); see Bounds v. Smith, 430 U.S. 817, 822 (1977).
 
 
 22
 Woodruff does not demonstrate how loss of the dictionary and documents caused him "actual injury" and he does not allege any specific incident where he was denied access to the courts. See Sands, 886 F.2d at 1171.
 
 
 23
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.[2]
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Woodruff asserts that Officer Lowden was responsible for increasing his sentence by 60 days. She was not. The Board of Prison Terms conducted a revocation hearing, separate from the disciplinary proceeding, regarding Woodruff's falsification of documents. Woodruff's term of imprisonment was extended by sixty days because falsifying documents is a felony, see Cal.Penal Code § 132 (Deering 1985), Woodruff had violated his parole on a robbery charge, and had other administrative violations
 
 
 [2]
 The document received on June 3, 1996 is construed as a motion to take judicial notice of the attached exhibits. So construed, the motion is ordered filed and is denied