Ana ARMENDAREZ, Plaintiff,

v.

GLENDALE YOUTH CENTER, INC.; Duane Fischer and Ronda Lee Fischer; Maria T. Pendleton; Ralph Figueroa; Luis Angel Viniegra; Sylvia De La Huerta, Defendants.

No. CV–99–1379–PHX–ROS.

United States District Court, D. Arizona.

May 20, 2003.

Newton Douglas Grimwood, Grimwood Law Firm PLC, Phoenix, AZ, for Plaintiff.

Daniel R Ortega, Jr., Roush McCracken Guerrero & Miller, Phoenix, AZ, for Defendants.

## ORDER

SILVER, District Judge.

This action arose from a dispute between Plaintiff Ana Armendarez, a former employee of the Glendale Youth Center, Inc. ("GYCI") and the GYCI Board of Directors ("Board"). Plaintiff filed a Complaint against both the GYCI and the individual members of the Board claiming unpaid wages under the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 201. Board members assert protection from suit for economic damages by the Volunteer Protection Act of 1997 ("VPA" or "Act"), 42 U.S.C. § 14501, and move through GYCI's counsel to dismiss the action. For the reasons stated above, the Court will grant Defendant's motion.

## I. BACKGROUND

### A. Facts

In March 1990, Defendant GYCI hired Plaintiff as its President and Chief Executive Officer. GYCI's Board ran the center, including policy development and direction. The Board also controlled Plaintiff's salary. The Board, as Plaintiff's employer, possessed the power to hire and fire her. (Def.Memo.¶ 1) (Doc. # 71).

Historically, grants of money funded GYCI. However, GYCI received no grants in 1997, but continued operating from earlier pledged grants. This money dwindled down after GYCI entered into serious debt in early 1996. (Def.Memo.¶ 2) (Doc. # 71).

In January of 1996, GYCI received notice from the I.R.S. concerning a year and a half of unpaid payroll taxes. The total debt to the I.R.S., including penalties and interest, totaled about $70,000. As a result of the debt the I.R.S. placed a lien on the agency. This lien made it even more difficult for GYCI to obtain grants and further funding. (Def. Memo ¶ 3) (Doc. # 71).

By September or October of 1996, GYCI ran out of money from its earlier grants. GYCI's substantial debts were incurred under Plaintiff's leadership. Plaintiff made a decision to leave GYCI, but decided to get the organization out of debt before leaving. In late 1996 to early 1997, Plaintiff realized that GYCI would not be able to pay her a salary because GYCI possessed no income, grant money, nor donations. GYCI contends that Plaintiff made the decision to stay on board *without a salary*, in order to get control of GYCI's major debts. (Def. Memo ¶ 4) (Doc. # 71). Plaintiff argues that the Board promised to *pay her unpaid wages.* (Compl.¶ 7) (Doc. # 1).

### B. Procedural History

On July 30, 1999, Plaintiff filed a Complaint (Doc. # 1) alleging unpaid wages under the FLSA. Plaintiff named as Defendants both GYCI and the individual members of the Board. GYCI, represented by counsel, filed an Answer on September 9, 1999 (Doc. # 5). The individual Defendants remained *pro se* and filed separate Answers between the dates of October 22, 1999 & June 15, 2000 (Doc # 11, 13, 32, 33, & 41).

On February 15, 2002, the Court issued a scheduling order for a status hearing and held it on March 22, 2002 (Doc. # 66, 68). Plaintiff's counsel and GYCI's counsel attended. According to the record and the report of counsel for GYCI, individual members of the Board neither obtained counsel nor attended. At the hearing it was undisputed that Plaintiff's recovery would only come from the individuals because GYCI was not solvent. Counsel for GYCI then raised the Volunteer Protection Act issue on behalf of the individual Defendants which was followed by a joint request for an "advisory opinion" from the Court regarding whether the Act absolved the individuals from liability. The Court agreed to allow GYCI counsel to move for dismissal on this issue on behalf of *pro se* individual Defendants.[1] The Court construes Defense counsel's Memorandum as a Motion to Dismiss under FED R. CIV P. 12(b)(6).[2]

On April 8, 2002, the Court ordered both parties to submit a Memorandum of Points

---

**1.** The court perceived no conflict in counsel's dual representation of GYCI and the individual member Defendants because counsel was requesting the Court to rule for the individual Defendants, which would leave only an insolvent GYCI as the sole Defendant responsible for the verdict.

**2.** The failure of the Defendant to file a Reply does not preclude this Court from deciding the Motion.

and Authorities addressing their position pursuant to the VPA. Defense counsel filed a Memorandum on April 29, 2002 (Doc. # 71) and Plaintiff filed a Memorandum on May 1, 2002 (Doc. # 72).

## II. DISCUSSION

The Court has original jurisdiction over this Federal question pursuant to 28 U.S.C. § 1331, as Plaintiff sues under 29 U.S.C. § 201.

### A. Legal Standard for Rule 12(b)(6) Motion to Dismiss

A court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Barnett v. Centoni*, 31 F.3d 813, 813 (9th Cir.1994) (citing *Buckey v. Los Angeles*, 957 F.2d 652, 654 (9th Cir.1992)); *see Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981).[3] "The federal rules require only a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997) (quoting Fed.R.Civ.P. 8(a)). "The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim." *Id.* at 249 (quotation marks omitted). "All that is required are sufficient allegations to put defendants fairly on notice of the claims against them." *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir.1991) (citing *Conley*, 355 U.S. at 47, 78 S.Ct. 99; 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1202 (2d ed.1990)). Indeed, though " 'it may appear on the face of the pleadings that a recovery is very remote and unlikely[,] ... that is not the test.' " *Gilligan*, 108 F.3d at 249 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

" 'The issue is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Id.*

When analyzing a complaint for failure to state a claim, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir.1996); *see Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). In addition, the district court must assume that all general allegations "embrace whatever specific facts might be necessary to support them." *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir.1994), *cert. denied*, 515 U.S. 1173, 115 S.Ct. 2640, 132 L.Ed.2d 878 (1995) (citations omitted). The district court need not assume, however, that the plaintiff can prove facts different from those alleged in the complaint. *See Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). Similarly, legal conclusions couched as factual allegations are not given a presumption of truthfulness and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir.1998); *see Jones v. Cmty, Redev. Agency*, 733 F.2d 646, 649–50 (9th Cir.1984); *W. Mining Council*, 643 F.2d at 624.

"Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988); *see* William W. Schwarzer et al., *Federal Civil Procedure Before Trial* § 9:187, at 9–46 (2002). Alternatively, dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery. *See Weis-*

*buch v. County of L.A.*, 119 F.3d 778, 783, n. 1 (9th Cir.1997) ("If the pleadings establish facts compelling a decision one way, that is as good as if depositions and other . . . evidence on summary judgment establishes the identical facts."); *see also Federal Civil Procedure Before Trial* § 9:193, at 9–47.

## B. Analysis

The VPA protects volunteers of non-profit organizations from both federal and state claims. Plaintiff contends the VPA preempts only state law. Defendant argues the VPA also precludes federal claims such as those arising under the FLSA. The Court concludes (1) the VPA preempts state law and precludes recovery from the volunteers under the FLSA, and (2) the VPA applies to the members of the Board.

### 1. The VPA Preempts State Law & Precludes the FLSA

■ The VPA provides:

[N]o volunteer of a nonprofit organization or governmental entity shall be liable for harm caused by an act or omission of the volunteer on behalf of the organization or entity if-

(1) the volunteer was acting within the scope of the volunteer's responsibilities in the nonprofit organization or governmental entity at the time of the act or omission;

(2) if appropriate or required, the volunteer was properly licensed, certified or authorized by the appropriate authorities for the activities or practice in the State in which the harm occurred, where the activities were or practice was undertaken within the scope of the volunteer's responsibilities in the non-profit organization or governmental entity;

(3) the harm was not caused by willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights of safety of the individual harmed by the volunteer; and

(4) the harm was not caused by the volunteer operating a motor vehicle, vessel, aircraft, or other vehicle for which the State requires the operator or the owner of the vehicle, craft, or vessel to possess an operator's license or maintain insurance.

42 U.S.C. § 14503(a)(1)-(4).[3]

This Act applies to *any* claim for harm caused by an act or omission of a volunteer. 42 U.S.C. § 14501 Hist. and Stat. Notes (b) (emphasis added).

Plaintiff argues that the VPA only preempts state law, quoting the following language from the VPA: "This chapter preempts the laws of any State to the extent that such laws are inconsistent with this chapter . . . ." 42 U.S.C. § 14502(a).

■ The Court has found no applicable case law discussing preclusion of federal law. However, the plain language of the statute, along with the legislative history, satisfies the Court that the VPA preempts state law and precludes the federal law at issue, the FLSA.[4] The text of § 14502(a) cannot be interpreted to prevent the application of the VPA to federal law, though its central focus is preemption of state law.

---

3. Plaintiff's Complaint only demands economic relief. Volunteers may be liable for non-economic loss under the VPA. 42 U.S.C. § 14504.

4. The Court found other federal statutes similar to the Volunteer Protection Act. However, an exhaustive search in Lexis and Westlaw generated no case law or legislative history discussing whether these statutes pertained to the preemption of state law and the preclusion of federal law. *See, e.g.*, No Child Left Behind Act of 2001, H.R. Conf. Rep. 107–334, § 2365, at 249 (2001); Community Solutions Act of 2001, H.R. Rep. 107–138(II), § 103, at 7 (2001); Small Business Liability Reform Act of 2000, H.R. Rep. 106–494, § 106, at 4 (2000).

In H.R. REP No. 105–101(I) at 6 (1997), the Committee stated:

It is not enough to leave it to the States to solve this problem. Volunteerism is a national activity and the decline in volunteerism is a national concern....Although every state now has a law pertaining specifically to legal liability of at least some types of volunteers, many volunteers remain fully liable for some actions. Only about half of the states protect volunteers other than officers and directors. Moreover, every volunteer protection statute has exceptions. As a result, state volunteer protection statutes are patchwork and inconsistent.... This inconsistency hinders national organizations from accurately advising their local chapters on volunteer liability and risk management guidelines.

The report also emphasizes, "H.R. 911, as amended, immunizes a volunteer *from liability* for harm caused by ordinary negligence...." No. 105–101(I) at 153 (emphasis added). This portion is noteworthy because it does not distinguish federal liability from state liability. Concomitantly, the Senate, in accord with the House, stated "[T]he Volunteer Protection Act...covers *all* civil lawsuits except those involving certain types of egregious misconduct." 145 CONG. REC. S6286 (daily ed. May 27, 1999) (statement of Sen. Abraham) (emphasis added). In addition, a thoughtful article on the issue from the Harvard Journal on Legislation states, "The Volunteer Protection Act *immunizes* those who voluntarily provide services...." "The heart of the legislation involves a *bar to liability* for individual volunteers." Again, the author does not distinguish between federal and state liability. *See* Andrew F. Popper, *A One–Term Tort Reform Tale: Victimizing The Vulnerable*, 35 HARV J. ON LEGIS. 123, 130–32 (1998) (emphasis added) (discussing the VPA as applying to both state and federal suits).[5]

Furthermore, the VPA contains several specific limitations on liability. These limitations on the liability of a volunteer under the VPA include *both* state and federal laws. For example, the limitations on liability shall not apply to misconduct that: (1) constitutes a crime of violence as defined in section 16 of Title 18 or an act of terrorism as defined in section 2331 of Title 18;[6] or (2) "involves misconduct for

5. The legislative history tends to establish that the VPA was intended to protect all volunteers from tort liability, whether state or federal. *See* H.R. REP. No. 105–101(I) at 7 (1997). The Court, however, has not found legislative history or case law establishing that volunteers are not protected from contract liability, but the broad, plain language of the VPA indicates it covers all liability whether rooted in tort or contract. *See* 42 U.S.C. § 14503(a). In addition, the historical and statutory notes following the VPA state, "[t]his Act applies to *any* claim for harm caused by an act or omission of a volunteer." 42 U.S.C. § 14501 Hist. and Stat. Notes (b) (emphasis added). Furthermore, even if the VPA's sole purpose is to eliminate tort liability, Plaintiff has brought suit under the FLSA asking for liquidated damages. (Comp.¶ 10) (Doc. # 1). The FLSA encompasses tort liability when the Plaintiff requests liquidated damages. *See*

*C.I.R. v. Schleier*, 515 U.S. 323, 325–26, 331, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995) (stating in dicta that FLSA provisions that permit the recovery of wages lost and an additional equal amount as liquidated damages are broad remedial mechanisms, distinguishing the non-tort based liquidated damages provisions of the ADEA as a significant departure from those in the FLSA). Therefore, the Court need not decide whether the VPA eliminates liability under both tort and contract claims because Plaintiff has failed to argue this issue and appears to have brought a claim rooted in tort.

6. These claims may be brought in state and federal court. Federal right of action exists for crimes of violence under 42 U.S.C. § 13981, for acts of terrorism under 18 U.S.C. § 2338.

which the defendant has been found to have violated a federal or state civil rights law." *See* 42 U.S.C. § 14503(f)(1)(A), (D).

Moreover, another section of the VPA indicates that limitations on punitive damages do not preempt or supercede any federal or state law. In general, punitive damages may not be awarded against a volunteer acting within the scope of his or her responsibilities unless the claimant establishes by clear and convincing evidence that the harm was proximately caused by an action which constitutes willful or criminal misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed. Congress added that this general rule does not preempt or supercede any federal or state law. *See* 42 U.S.C. § 14503(e)(1), (2).

Congress clearly demonstrated an intent for the VPA's liability protection to generally cover both state and federal law, as evidenced by Congress expressly listing exceptions to the VPA's liability protection several federal laws. Dispositive to the resolution of this Motion is that those federal laws listed as exceptions do *not* include the FLSA. Because Congress purposely failed to list the FLSA as an exception, the Court cannot imply that the FLSA is an exception to the VPA's limitations on liability. *See generally Lehman v. Nakshian,* 453 U.S. 156, 166–69, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981) (holding that federal employees suing under section 15 of the ADEA are not entitled to a jury trial on their claims because Congress did not grant that right by statute as they did in section 7(a)).

### 2. The VPA Applies to Individual Members of the Board

Having determined the VPA applies to Plaintiff's FLSA claim, the Court now turns to whether the individual members of the board enjoy protection by the VPA. As stated above, volunteers are protected if: (1) acting within the scope of their duties as Board Members; (2) properly authorized to serve as Board Members; (3) the harm was not caused by willful or criminal misconduct, gross negligence, or reckless misconduct; (4) the harm was not caused by the volunteer operating a motor vehicle, vessel, or aircraft. *See* 42 U.S.C. § 14503(a)(1)-(4). In addition, volunteers lose liability protection if convicted of a federal crime of violence, an act of international terrorism, a state law sexual offense, misconduct violative of federal or state civil rights law, or if the volunteer was under the influence of alcohol determined by applicable state law. *See* 42 U.S.C. § 14503(f)(1)(A)-(E). In Defendant's Memorandum it is argued that the individual Defendants are volunteers, that they acted within the parameters of the VPA, and thus are immune from suit pursuant to the VPA. Plaintiff's Memorandum stipulates that the individuals are volunteers within the meaning of the VPA, it fails to discuss either the § 14503(a) elements for protection or the § 14503(f) exceptions. Pursuant to Local Rule 1.10(i), Plaintiff's failure to respond may, in the discretion of the Court, be deemed a consent.

Accordingly,

**IT IS THEREFORE ORDERED** that the Motion to Dismiss (Doc. # 71) filed by Defendant is **GRANTED,** and all claims against the individual Defendant's are **DISMISSED.**

**IT IS FURTHER ORDERED** that a Status Hearing is set for Friday, June 6, 2003 at 11:30 a.m.