Lee Max BARNETT, Plaintiff–Appellant,

v.

Helen CENTONI, Correctional Officer, San Quentin State Prison; S. Donahue, Correctional Officer, San Quentin State Prison, Defendants–Appellees.

No. 93–16930.

United States Court of Appeals, Ninth Circuit.

Submitted July 18, 1994 *.

Decided July 27, 1994.

---

* The panel unanimously finds this case suitable for decision without oral argument.   Fed.R.App.P.   34(a);   9th Cir.R. 34–4.

Lee Max Barnett, pro se.

Peter J. Siggins, Deputy Atty. Gen., San Francisco, CA, for defendants-appellees.

Before: FARRIS, KOZINSKI, and NOONAN, Circuit Judges.

## PER CURIAM:

California state prisoner Lee Max Barnett, a death row inmate, appeals pro se the district court's summary judgment in favor of corrections officials in Barnett's 42 U.S.C. § 1983 action. We have jurisdiction under 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand for further proceedings.

## I. Background

In January 1992, Barnett wrote a harassing letter to the parents of a key prosecution witness in Barnett's criminal trial. The witness had recently committed suicide. On February 7, 1992, the Butte County District Attorney's office requested that prison officials prevent Barnett from harassing individuals associated with his criminal case. Barnett was charged with a disciplinary rule violation, and the charging officer recommended that Barnett be considered for reclassification from grade A to grade B to prevent him from sending other such letters.[1] Barnett was notified on February 13, 1992 that an administrative classification hearing would be held within 10 days to review his classification.

On February 20, 1992, a hearing was held and prison officials determined that a grade B classification was administratively warranted pending the hearing on the disciplinary charge. On March 10, 1992, while in grade B, Barnett was found in possession of inmate manufactured alcohol ("pruno"). He was charged with this disciplinary violation and found guilty on March 17, 1992. On April 1, 1992, Barnett was found guilty of the charge arising out of the abusive letter and counselled about his behavior, but he was not assessed any significant penalty. Barnett was retained in grade B based on the pruno violation. While classified as grade B, Barnett was entitled to and received a reclassification hearing every 90 days.

In July 1992, Barnett was once again found in possession of pruno. In December 1992, Barnett became verbally abusive, employing numerous scatological terms to describe a corrections officer after she told him that he could not bring a pill, cotton balls, and a plastic bag into the yard. After abusing the guard, he then disobeyed her order to return to his cell. Further, prison officials "verified" that Barnett is an associate of the Aryan Brotherhood prison gang. Such an affiliation precludes grade A classification. Barnett's repeated violations of prison regulations and his association with the Aryan Brotherhood have led to his continued grade B classification.

Barnett filed this civil rights action alleging that (1) his classification in grade B status violated his right to due process; (2) he was reclassified to grade B in retaliation for filing separate civil rights actions; (3) he was denied contact visits with his attorney in violation of his right of access to the courts; (4) he was denied property without due process; and (5) he was denied contact visitation privileges.

---

1. Under the consent decree in *Thompson v. Enomoto* condemned prisoners are classified as either condemned grade "A" or grade "B." No. C–79–1630–SAW (N.D.Cal. Oct. 23, 1980).

Grade A prisoners received additional privileges such as, contact visits, telephone calls, and additional storage space.

The district court granted summary judgment on Barnett's claims that he was denied due process when he was given a grade B classification; he was denied access to the courts; and he was retaliated against by prison officials for filing civil rights actions. The district court dismissed pursuant to Fed. R.Civ.P. 12(b)(6) Barnett's remaining claims that he was denied contact visitation privileges and that he was deprived of property without due process.

## II. Discussion

### A. *Summary Judgment*

Barnett contends that the district court erred by granting summary judgment on his reclassification, access to the courts and retaliation claims. We review the district court's grant of summary judgment de novo. *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir.1990). Summary judgment is appropriate if the evidence, read in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). If a nonmoving party bears the burden of proof at trial, he must establish each element of his claim with " 'significant probative evidence tending to support the complaint.' " *Smolen*, 921 F.2d at 963 (quoting *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987)).

### 1. *Reclassification Claim*

■ Barnett contends that he was reclassified in violation of his right to due process. Barnett admits that he violated prison mail regulation, Cal.Code Regs. tit. 15, § 3135 (1991), by sending the abusive letter. Barnett argues, however, that section 3135 provides only that an inmate's mail may be restricted for sending "disturbing or offensive correspondence," and does not authorize reclassification as a punishment for sending such mail. This argument fails because Barnett was reclassified as an administrative measure and not as a punitive one. Barnett received a disciplinary report which resulted in counseling for writing a harassing letter to the family of a witness in his criminal trial.[2] The corrections officer writing up this infraction recommended that the classification committee administratively review Barnett's classification so that corrections officials could better monitor his correspondence.

Due process, in the administrative context, merely requires that the prison officials provide the inmate with "some notice of the charges against him and an opportunity to present [the inmate's] views to the prison official charged with deciding whether to transfer [the inmate] to administrative segregation." *Toussaint v. McCarthy*, 801 F.2d 1080, 1099 (9th Cir.1986) (quotation and citation omitted), *cert. denied*, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987). Here, Barnett was notified that the prison classification committee was considering whether to reclassify him, and he had an opportunity to present his views to the committee. Accordingly, Barnett's due process rights were not violated by the prison classification committee's administrative decision to classify Barnett as grade B.

Further, under the consent decree entered in *Thompson v. Enomoto*, No. C–79–1630–SAW (N.D.Cal. Oct. 23, 1980), administrative classification decisions are "in the sound discretion of institutional staff, such discretion to be exercised in a non-arbitrary and non-capricious manner." Among the factors that prison staff may consider in classification decisions are the inmate's stability, history of violence, prior disciplinary actions, and prison gang affiliation. In light of the broad discretion enjoyed by prison officials in making classification determinations, we cannot say that Barnett's administrative reclassification to allow prison officials to better monitor his mail was either arbitrary or capricious. *See Toussaint*, 801 F.2d at 1104.

### 2. *Retaliation Claim*

■ Barnett contends that he was reclassified because he had previously filed civil rights actions against prison officials regarding his medical treatment. A prisoner suing

---

**2.** Counseling is within the range of responses contemplated by section 3135(c). *See id.* (reme-

dy "may include a discussion of the complaint with the inmate").

prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline. *Rizzo v. Dawson,* 778 F.2d 527, 532 (9th Cir.1985).

■ At summary judgment, appellees introduced evidence that Barnett was found guilty by a prison disciplinary board for possessing pruno. Further, appellees introduced the affidavit of Robert Hernandez, a member of the classification committee, that the committee did not retaliate against Barnett. Moreover, appellees submitted under seal a confidential report with supporting documentation indicating that Barnett is affiliated with the Aryan Brotherhood, a prison gang.[3]

Because there was "some evidence" to support Barnett's reclassification, *see Superintendent v. Hill,* 472 U.S. 445, 455–56, 105 S.Ct. 2768, 2773–75, 86 L.Ed.2d 356 (1985), and because Barnett's reclassification served the legitimate penological purpose of maintaining prison discipline, *see Rizzo,* 778 F.2d at 532, the district court properly granted summary judgment on Barnett's retaliation claim.

### 3. *Access to the Courts*

■ Barnett contends that he was deprived of access to the courts because he was denied contact visits with and telephone access to his attorney. The Constitution guarantees prisoners meaningful access to the courts. *Bounds v. Smith,* 430 U.S. 817, 822, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977). "A prisoner's right of access to the courts includes contact visitation with his counsel." *Ching v. Lewis,* 895 F.2d 608, 610 (9th Cir. 1990). This right may be limited if prison officials can show that such limitations are "reasonably related to legitimate penological interests." *Casey v. Lewis,* 4 F.3d 1516, 1520 (9th Cir.1993) (citation omitted). Here, pris-

on officials made no such showing. Accordingly, we reverse the district court's order granting summary judgment on this issue, and remand so that the district court may consider this claim in light of our decisions in *Ching* and *Casey.*[4]

### B. *Failure to State a Claim*

Barnett contends that the district court erred by dismissing his claims that he was denied contact visitation privileges and deprived of property in violation of his civil rights pursuant to Fed.R.Civ.P. 12(b)(6). We review de novo the district court's dismissal pursuant to Rule 12(b)(6). *Oscar v. Univ. Students Coop. Ass'n,* 965 F.2d 783, 785 (9th Cir.) (en banc), *cert. denied,* —— U.S. ——, 113 S.Ct. 655, 121 L.Ed.2d 581 (1992). In determining whether a complaint states a claim, all allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *Love v. United States,* 915 F.2d 1242, 1245 (9th Cir.1989). A complaint may not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *Buckey v. Los Angeles,* 957 F.2d 652, 654 (9th Cir.1992).

### 1. *Deprivation of Property*

Barnett contends that the district court erred by dismissing his claim that he was deprived of property without due process. We disagree. Barnett was deprived of property because he was reclassified to grade B, and in that classification, he was not eligible to possess the additional property. *See Thompson v. Enomoto,* No. C–79–1630–SAW (N.D.Cal. Oct. 23, 1980).

■ Moreover, a negligent or intentional deprivation of a prisoner's property fails to state a claim under section 1983 if the state has an adequate post deprivation remedy. *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 3203–04, 82 L.Ed.2d 393 (1984). California Law provides an adequate post-

---

3. The confidential report was submitted for filing under seal with this court. Appellees' motion for in-camera review of documents submitted under seal is granted. The Clerk shall return these documents to the attorney for the appellees.

4. Because we remand this claim for further proceedings, we take no position on whether Barnett was entitled to telephonic communication with his attorney.

deprivation remedy for any property deprivations. *See* Cal.Gov't Code §§ 810–895. Thus, to the extent that Barnett claims that he was deprived of property that he was entitled as a grade B inmate, he failed to state a claim, and the district court properly dismissed this claim.

### 2. *Contact Visitation Privileges*

Barnett contends that the district court erred by dismissing his claim that he had a right to contact visitation privileges. We disagree. In *Toussaint v. McCarthy,* this court held that prisoners had no constitutional right to such privileges. 801 F.2d 1080, 1113–14 (9th Cir.1986), *cert. denied,* 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987). Therefore, the district court properly dismissed this claim.

### III. Conclusion

The judgment of the district court is affirmed except as to the access to the courts claim. We reverse the district court's grant of summary judgment on that claim and remand for further proceedings.[5]

**AFFIRMED in PART, REVERSED in PART, and REMANDED.**

---

**5.** Appellant's pending motions are denied as     moot.