Gary Dale **HINES, Plaintiff–Appellee–Cross–Appellant,**

v.

James **GOMEZ, Director, Defendant,**

and

S. **Pearson, Defendant–Appellant–Cross–Appellee.**

Nos. 95–17259, 95–17260.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 15, 1997.

Decided March 7, 1997.

---

Catherine A. McBrien, Deputy Attorney General, San Francisco, California, for defendant-appellant-cross-appellee.

Diane J. Mason, San Francisco, California, for plaintiff-appellee-cross-appellant.

Before: LAY,* GOODWIN and SCHROEDER, Circuit Judges.

* Honorable Donald P. Lay, Circuit Judge for the Eighth Circuit, sitting by designation.

## OPINION

LAY, Circuit Judge:

Gary Dale Hines, a death row inmate, brought this action under 42 U.S.C. § 1983 against various prison officials employed by the San Quentin State Prison in California. Hines alleges, *inter alia*, that Steven Pearson, a prison guard, falsely charged him with a rule violation and that Stephen Szmaciarz, a hearing officer, falsely found Hines guilty of the infraction. Hines maintains that both officials acted in retaliation for his prior use of the prison grievance system.[1] The parties agreed to try the case before a magistrate judge. A jury found for Hines against Pearson and Szmaciarz.[2] The magistrate judge then granted Szmaciarz's post verdict motion for judgment as a matter of law but denied Pearson's post trial motions. Pearson appeals the magistrate judge's post trial decision and Hines cross-appeals the grant of Szmaciarz's motion. We affirm.

## BACKGROUND

On January 19, 1992, Officer Pearson was escorting Hines back to his cell after Hines had his morning shower. Hines wore only his boxer shorts with his hands cuffed behind his back. Pearson was holding the very short chain that connected the cuffs. Nonetheless, Pearson reported Hines stopped to receive some unidentified object from some other, unidentified inmate. Pearson also reported that Hines threatened him. At San Quentin, stopping while being escorted violates a prison rule. Hines denies he attempted to stop. Hines later filed a prison appeal alleging Pearson used excessive force and threatened him during the January 19 incident.

Hines brought this action under § 1983 alleging that Pearson's charge was false and in retaliation for his use of the grievance system. The jury returned a verdict for Hines against Pearson. The magistrate judge denied Pearson's motion for judgment as a matter of law and motion for a new trial.

The magistrate judge found that although "there was no *direct* evidence that Officer Pearson harbored a retaliatory animus towards plaintiff based on plaintiff's prolific use of the prison grievance system, there was sufficient circumstantial evidence from which a jury rationally could have found that Pearson's conduct was driven by a retaliatory motive." *Hines v. Gomez*, No. CV 92-0120, slip op. at 12 (N.D.Cal. Aug. 18, 1995) (order denying in part post-trial motions) (emphasis in original).

## DISCUSSION

■ This court reviews civil jury verdicts to determine whether the verdict is supported by substantial evidence. *George v. City of Long Beach*, 973 F.2d 706, 709 (9th Cir.1992).

### I. Pearson Appeal

Pearson's appeal raises several issues. We must decide whether there was substantial evidence that Pearson charged Hines in retaliation for Hines' use of the prison grievance process. Pearson also claims the trial court erred by failing to apply the "some evidence" standard of review to Pearson, and that Hines' alleged injuries are not sufficient bases to sustain his retaliation claim.

### A. Substantial Evidence of Pearson's Retaliation

■ Pearson maintains there was no evidentiary basis supporting the jury's finding that he filed the disciplinary report with a retaliatory motive. Hines' retaliation claim must rest on proof that Pearson filed the disciplinary action against him in retaliation for Hines' exercise of his constitutional rights and that the retaliatory action advanced no legitimate penological interest. *See Barnett v. Centoni*, 31 F.3d 813, 815–16 (9th Cir.1994) (citing *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir.1985)). Pearson challenges whether the evidence satisfies the first prong, particu-

---

1. While Hines also sued other correctional officers, only the claims against Pearson and Szmaciarz are involved in this appeal.

2. The jury awarded Hines $100 compensatory damages and $1,000 punitive damages against Pearson. Hines was awarded $200 in compensatory damages and $1,000 punitive damages against Szmaciarz.

larly contending there was no proof that he even knew of Hines' use of the prison grievance system.

We agree with the magistrate judge's appraisal that reasonable inferences from the evidence support the jury's verdict. Officials and guards other than Pearson testified of Hines' reputation for "complaining" or "whining." Hines had in fact filed many grievances. More specifically, there was evidence that on the morning of the incident giving rise to this suit Hines expressly informed Pearson he was "going to grievance him." This evidence amply supports the inference that Pearson knew, at least to some extent, of Hines' use of the grievance system. Pearson does not contest the jury's determination that he falsely accused Hines of attempting to receive an object from another inmate. The express rejection of Pearson's proffered reason for the disciplinary charge, the circumstantial evidence of Hines' reputation within the prison as a complainer and a whiner, and evidence that on the same morning of the incident in question Hines threatened Pearson with a grievance, warrants the jury's finding that Pearson filed the disciplinary report in retaliation for Hines' use of the grievance system.

### B. "Some Evidence" Standard to Pearson

■ Pearson argues the district court should have applied the deferential "some evidence" standard of review in analyzing his accusation that Hines violated a disciplinary rule. In *Superintendent v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), the Supreme Court considered the deference courts must afford a prison disciplinary board's finding that a prisoner committed an infraction where the punishment is the loss of good time credits. *Hill* held that if there is even "some evidence" to support the prison's disciplinary decision, the requirements of due process are satisfied. 472 U.S. at 455, 105 S.Ct. at 2773–74.

The question becomes whether the deferential *Hill* standard of review should apply not only to a prison disciplinary board's finding of a rule violation, but also to a prison guard's initial accusation of a rule violation where the guard's accusation itself allegedly is false and retaliatory. We think not.

The *Hill* Court sought to strike the proper balance between a prisoner's right to rational decisions that affect his incarceration period and the prison's interest in maintaining institutional safety through efficient discipline of prisoners who violate prison rules. In concluding that existence of "some evidence" sufficiently accommodates the competing interests, the Court reasoned that "[r]equiring a modicum of evidence to support a decision to revoke good time credits will help to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens." 472 U.S. at 455, 105 S.Ct. at 2774. Because "[p]rison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances," the Due Process Clause does not mandate that courts abrogate prison administrators' decisions "that have some basis in fact." *Id.* at 456, 105 S.Ct. at 2774.

The distinction between the institutional interests in a prison board's disciplinary decision and a guard's accusation of wrongdoing removes cases such as this from *Hill*'s authority. A prison board will base its disciplinary decision on its own credibility determinations and on independent evidence provided to the board. The board generally will afford the accused inmate advance written notice of the charges, an opportunity to call witnesses provided there is no conflict with institutional safety and correctional goals, and a written statement outlining the evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563–67, 94 S.Ct. 2963, 2978–80, 41 L.Ed.2d 935 (1974). The *Hill* Court expressly considered these due process protections when it weighed the prisoner's interests against those of the institution. *See Hill*, 472 U.S. at 454–55, 105 S.Ct. at 2773–74. In contrast, there are no procedural safeguards protecting a prisoner from false retaliatory accusations; a guard may, and often does, file an accusation solely on his

own word, making his mere accusation the only "modicum of evidence."

Pearson argues that this court's decision in *Barnett* mandates that we apply the deferential *Hill* standard to his allegation against Hines. We disagree. *Barnett* does not extend the "some evidence" standard to immunize retaliatory accusations by prison guards. *Barnett* focused on a prison classification committee decision to discipline the prisoner. *Barnett*, 31 F.3d. at 814.

We hold that where a prisoner alleges a correctional officer has falsely accused him of violating a prison rule in retaliation for the prisoner's exercise of his constitutional rights, the correctional officer's accusation is not entitled to the "some evidence" standard of review that we afford disciplinary administrative decisions. The magistrate court properly refused to apply the "some evidence" standard to Pearson's allegedly false and retaliatory accusation.

## C. Sufficiency of Claimed Injuries

■ Pearson argues that Hines' punishment of ten-day confinement and television loss did not constitute an "atypical and significant hardship" as required in *Sandin v. Conner*, ── U.S. ──, ──, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995). In *Sandin*, the Supreme Court determined that the Due Process Clause afforded a prisoner no protected liberty interest where the prisoner claimed prison officials wrongly sentenced him to thirty days segregation in a holding cell. *Sandin*, ── U.S. at ──, ──, 115 S.Ct. at 2296, 2302. The Court noted, however, that prisoners

> retain other protection from arbitrary state action even within the expected conditions of confinement. They may invoke the First and Eighth Amendments and the Equal Protection Clause of the Fourteenth Amendment where appropriate, and may draw upon internal prison grievance procedures and state judicial review where available.

*Id.* at ── n. 11, 115 S.Ct. at 2302 n. 11.

Since *Sandin*, this court has reaffirmed that prisoners may still base retaliation claims on harms that would not raise due process concerns. In *Pratt v. Rowland*, 65 F.3d 802 (9th Cir.1995), a prisoner complained of being double-celled after a long stretch of being single-celled, and claimed that prison officials made the change to retaliate for his agreement to participate in a television interview. This court noted that the prisoner had no constitutionally protected liberty interest in being held in a given facility, but that the *Rizzo* line of retaliation cases survives *Sandin*. *Pratt*, 65 F.3d at 806–07. *Pratt* then concluded that "it would be illegal for [prison] officials to transfer and double-cell Pratt solely in retaliation for his exercise of protected First Amendment rights." *Id.* at 807.

Hines has alleged Pearson's false charge infringed his First Amendment right to file prison grievances. The allegation here falls squarely within *Sandin*'s eleventh footnote and *Pratt*'s reasoning; the injury asserted is the retaliatory accusation's chilling effect on Hines' First Amendment rights, not the additional confinement or the deprivation of the television. We hold that Hines' failure to demonstrate a more substantial injury does not nullify his retaliation claim. *Cf. Perry v. Sindermann*, 408 U.S. 593, 597–98, 92 S.Ct. 2694, 2697–98, 33 L.Ed.2d 570 (1972) (holding that although teacher had no entitlement to employment contract renewal, the college administration's nonrenewal based on the teacher's public criticism of the college is actionable as a violation of the teacher's free speech rights).

## II. Hines' Cross–Appeal

### Szmaciarz

■ Hines' cross-appeal requires us to determine whether the trial court erred by applying the "some evidence" standard of review to Szmaciarz. Hines contends the standard does not apply where the disciplinary charge itself, not the punishment, is contested. Obviously, the deferential standard would never apply if prisoners could simply fashion their complaint to allege retaliation based on the disciplinary charge instead of the punishment. In any event, as discussed above, *Hill* regards the degree of deference to afford a prison factfinder's guilt determination; because that determination necessar-

ily considers the merits of the charge, we find Hines' argument unpersuasive. In accord with our earlier decision in *Barnett,* 31 F.3d at 815–16, we apply the "some evidence" deferential standard of *Hill* to the findings of the disciplinary board in the present case.[3]

## CONCLUSION

In sum, we find that substantial evidence supports the jury's verdict that Pearson charged Hines in retaliation for Hines' use of the prison grievance process. The trial court's refusal to apply the "some evidence" standard of review to Pearson was not error. Nor was it error to apply the standard to Szmaciarz. We also determine that Hines' retaliation claim requires no more substantial injury than alleged.

Accordingly, we affirm the judgment.

---

**3.** The Second Circuit in *Graham v. Henderson,* 89 F.3d 75 (2d Cir.1996), found that the *Hill* "some evidence" test was inapplicable where the prisoner claimed that the Board's decision was based on retaliation for the exercise of the prisoner's First Amendment rights. Ninth Circuit precedent in *Barnett,* however, controls our decision and we accordingly adhere to it.