Herman RESNICK, Plaintiff–Appellant,

v.

Warden HAYES; Lt. Ernst; Officer Myers (DHO); Counselor Aune; Officer Wade, Defendants–Appellees.

No. 98–15704.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 7, 1999

Filed Jan. 11, 2000

Amended May 22, 2000

Howard A. Slavitt, Coblentz, Patch, Duffy & Bass, San Francisco, California, for the plaintiff-appellant.

No appearance for the defendants-appellees.

Kathleen Moriarty Mueller and Edward R. Cohen, Attorneys, Appellate Staff, Civil Division, Department of Justice, Washington, D.C., for the amicus curiae.

Before: GOODWIN, SCHROEDER, and GRABER, Circuit Judges.

### ORDER

The opinion filed January 11, 2000 [200 F.3d 641], is amended as follows:

Slip opinion page 333, last paragraph, through the first full paragraph on page 335 [200 F.3d at 646], substitute the following:

Under *Sandin,* a prisoner possesses a liberty interest under the federal constitution when a change occurs in confinement that imposes an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." 515 U.S. at 484, 115 S.Ct. 2293. In this case, Plaintiff has failed to establish a liberty interest protected by the Constitution. That is so because Plaintiff has not alleged that his confinement, whether administrative or disciplinary, presented "the type of atypical, significant deprivation [that] might conceivably create a liberty interest." *Id.* at 486, 115 S.Ct. 2293. The Court in *Sandin* relied on three factors in determining that the plaintiff possessed no liberty interest in avoiding disciplinary segregation: (1) disciplinary segregation was essentially the same as discretionary forms of segregation; (2) a comparison between the

plaintiff's confinement and conditions in the general population showed that the plaintiff suffered no "major disruption in his environment"; and (3) the length of the plaintiff's sentence was not affected. *Id.* at 486–87, 115 S.Ct. 2293.

Here, there is no allegation that Plaintiff's segregation in the SHU was materially different from those conditions imposed on inmates in purely discretionary segregation. Nor is there an allegation that the conditions in the SHU, compared with conditions in the general population, created "a major disruption" in Plaintiff's environment.[3] Finally, there is no allegation that the length of Plaintiff's sentence was affected.

In sum, so far as we know from his complaint, Plaintiff's placement and retention in the SHU were "within the range of confinement to be normally expected" by prison inmates "in relation to the ordinary incidents of prison life." *Id.* at 486–87, 115 S.Ct. 2293. Therefore, we conclude that Plaintiff had no protected liberty interest in being free from confinement in the SHU pending his disciplinary hearing. That being so, Plaintiff has no cognizable due process claim. Likewise, because Plaintiff had no protected liberty interest in not being confined in the SHU, he fails to state a Fourth Amendment claim.

With this amendment, Appellant Herman Resnick's Petition for Panel Rehearing is DENIED.

## OPINION

GRABER, Circuit Judge:

At all times relevant to this appeal, plaintiff Herman Resnick was a federal prisoner. Defendants are the warden (Hayes) and four correctional officers (Ernst, Myers, Aune, and Wade) who work at a prison in which Plaintiff was incarcer-

ated. Plaintiff filed a complaint in federal district court, claiming that Defendants had violated his constitutional rights when they confined him in the prison's Special Housing Unit (SHU) pending a disciplinary hearing. The district court dismissed Plaintiff's complaint, pursuant to 28 U.S.C. § 1915A, for failure to state a claim upon which relief could be granted. Plaintiff filed this timely appeal.

## BACKGROUND

On December 2, 1996, Plaintiff was charged with, and pleaded guilty to, bank larceny in violation of 18 U.S.C. § 2113(b). After pleading guilty, and at all relevant times, Plaintiff was incarcerated at the Federal Detention Center in Dublin, California. On August 13, 1997, Plaintiff was sentenced to 103 months' imprisonment.

On April 8, 1997, after Plaintiff had pleaded guilty to bank larceny but before he was sentenced for committing that crime, Plaintiff was found guilty of using narcotics in the prison. *See Resnick v. Adams,* 37 F.Supp.2d 1154, 1156 (C.D.Cal. 1999). Plaintiff was disciplined for his use of narcotics by, among other things, being placed in the prison's SHU for 30 days.

On April 10, 1997, after Plaintiff had been placed in the SHU, Wade searched Plaintiff's cell. Wade found a white powdery substance at the bottom of a Sweet 'N Low box on Plaintiff's desk. Ernst field-tested the white powder and determined that it was cocaine. Later that same day, Plaintiff was given written notice of the charge against him. Plaintiff denied that he had possessed any cocaine and asked that another test be conducted on the contents of the Sweet 'N Low box. Plaintiff alleges that the results of the second test were negative for the presence of cocaine.

---

**3.** Plaintiff alleged that, in the SHU, recreational opportunities and access to showers are limited; the mattress is flat and dirty; no pillow is allowed; a prisoner cannot have access to the library; and half the time the food is cold. He did not allege that conditions were different in administrative segregation, nor did he allege the extent to which conditions were better in the general population.

On April 12, 1997, Plaintiff appeared before a prison counselor, Cadena, who considered the charge. Cadena advised Plaintiff of the charge against him. Plaintiff admitted owning the Sweet 'N Low box but denied that he had possessed cocaine. Cadena referred the matter to Discipline Hearing Officer Myers for further hearing, on the grounds that (1) a white powdery substance was found in the Sweet 'N Low box in Plaintiff's cell, (2) Plaintiff admitted that he owned the box, and (3) the substance in the box field-tested positive for cocaine.

On May 17, 1997, Plaintiff wrote to Myers, complaining that he had not yet had a hearing to contest the drug charge. Myers responded and advised Plaintiff that the hearing had been "postponed pending the results of the lab." A hearing was held on June 19, 1997. According to Myers' hearing report, Plaintiff appeared with his staff representative, Aune. Although Plaintiff alleges that he attempted to call Wade as a witness, Myers' hearing report states that Plaintiff did not ask that any witnesses be called. Additionally, the report states that Myers considered a "crime laboratory report." Myers concluded that "no prohibited act [was] committed" and ordered that the incident report be expunged from Plaintiff's file.

Plaintiff alleges that Myers did not postpone Plaintiff's hearing because the prison had yet to receive a laboratory report concerning the white powder found in the Sweet 'N Low box. Rather, Plaintiff claims, no such report ever was prepared. Plaintiff alleges that Myers postponed his hearing so that Hayes could pressure Plaintiff into divulging information about correctional officers who were bringing narcotics into the prison. Plaintiff further alleges that Hayes told Plaintiff that, if he did not cooperate, he would not be released from the SHU until after Hayes retired. Additionally, Plaintiff alleges that Hayes instructed Aune to tell Plaintiff that, if Plaintiff told anyone about the matter, Aune would "hang" Plaintiff and make it "look like an accident."

Plaintiff filed a pro se complaint under 42 U.S.C. § 1983 against Hayes, Ernst, Myers, Aune, and Wade, claiming that they had conspired to violate his constitutional rights under the Fifth, Eighth, and Fourteenth Amendments. Pursuant to 28 U.S.C. § 1915A,[1] the district court conducted a preliminary screening of Plaintiff's complaint. Although the court noted that *"[p]ro se* pleadings must ... be liberally construed," it dismissed the complaint for failure to state a claim. The court held that Plaintiff's placement in segregation pending his hearing did not violate his right to due process. The court also held that Plaintiff was not denied due process with regard to his disciplinary hearing. Finally, the court held that Plaintiff's allegations that Defendants had planted cocaine in his cell and made death threats against him did not constitute a cognizable claim. Plaintiff timely appealed.

On appeal, this court appointed counsel for Plaintiff and ordered the government to appear at oral argument and to file either a supplemental brief or an amicus

---

1. Title 28 U.S.C. § 1915A provides:

(a) The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

(c) As used in this section, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.

curiae brief.[2] The government filed an amicus curiae brief.

## STANDARD OF REVIEW

 This court reviews de novo a district court's dismissal of a complaint under 28 U.S.C. § 1915A for failure to state a claim upon which relief can be granted. *See Cooper v. Pickett,* 137 F.3d 616, 623 (9th Cir.1997). Under § 1915A, when determining whether a complaint states a claim, a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff. *See id.* Additionally, in general, courts must construe pro se pleadings liberally. *See Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988).

## DISCUSSION

On appeal, Plaintiff claims that Defendants violated his due process rights under the Fifth Amendment and his Fourth Amendment right to be free from an unreasonable seizure. Plaintiff also claims that his confinement in the SHU was retaliatory. We consider each claim in turn.

### 1. *Fourth and Fifth Amendment Claims*

With regard to his due process claim, Plaintiff argues, in essence, that his constitutional rights were violated because (1) he was placed in disciplinary segregation without first having been afforded a hearing, (2) his disciplinary hearing did not take place until 70 days after the incident, and (3) the hearing that he received was constitutionally defective, because he was not allowed to call Wade as a witness.

To prevail, Plaintiff must establish that he had a liberty interest in being free from being placed in the SHU. *See Sandin v. Conner,* 515 U.S. 472, 487, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (holding that a convicted inmate who had been placed in disciplinary segregation in a prison's SHU for 30 days had no cognizable procedural

due process claim, because he had no liberty interest in being free from such confinement); *see also May v. Baldwin,* 109 F.3d 557, 565 (9th Cir.1997) (holding that convicted inmate was not "denied due process when he was placed in [a Disciplinary Housing Unit] pending a disciplinary hearing. [The inmate's] due process claim fails because he has no liberty interest in freedom from state action taken within the sentence imposed, and the Ninth Circuit explicitly has found that administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence.") (citation and internal quotation marks omitted).

Plaintiff's "substantive due process" and Fourth Amendment claims also hinge on whether he had a liberty interest in being free from confinement in the SHU. *See Nunez v. City of Los Angeles,* 147 F.3d 867, 871 (9th Cir.1998) ("The concept of 'substantive due process,' semantically awkward as it may be, forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.' ") (quoting *United States v. Salerno,* 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)); *Leslie v. Doyle,* 125 F.3d 1132, 1135 (7th Cir.1997) ("Official action constitutes a seizure [under the Fourth Amendment] when it deprives a person of some meaningful measure of liberty to which he is entitled.").

 Relying on *Sandin,* the government argues that Plaintiff, by virtue of being a convicted prisoner, has no liberty interest in not being confined in the SHU. Accordingly, the government contends, Plaintiff was not entitled to any hearing before being placed in such confinement. Therefore, the argument goes, any delay in providing Plaintiff a hearing and any defects in that hearing did not deprive Plaintiff of his due process or Fourth

---

**2.** Defendants are not parties to this appeal, because the district court dismissed Plaintiff's

complaint sua sponte under 28 U.S.C. § 1915A before Defendants were served.

Amendment rights. In the circumstances of this case, we agree.

The only significant difference between *Sandin* and this case is that Plaintiff, although convicted, had not been sentenced before being placed in segregated housing. In *Sandin*, the Court noted that, unlike a convicted prisoner, a pretrial detainee may have a liberty interest in not being placed in disciplinary segregation. *See* 515 U.S. at 484, 115 S.Ct. 2293; *see also Mitchell v. Dupnik*, 75 F.3d 517, 524 (9th Cir.1996) (holding that "pretrial detainees may be subjected to disciplinary segregation only with a due process hearing to determine whether they have in fact violated any rule"). The question here is whether, for purposes of analyzing whether Plaintiff had a liberty interest in being free from confinement in the SHU, he should be treated as a pretrial detainee or as a sentenced inmate.

Precedent from other circuits supports treating Plaintiff as a sentenced inmate. In *Whitnack v. Douglas County*, 16 F.3d 954, 957 (8th Cir.1994), for example, the court held that a claim by a convicted prisoner awaiting sentencing is governed by the Eighth Amendment and that a claim by a pretrial detainee is governed by the Fourteenth Amendment. *See also Berry v. City of Muskogee*, 900 F.2d 1489, 1493 (10th Cir.1990) (holding that, when determining whether the Eighth or the Fourteenth Amendment governs an inmate's claim, "[t]he critical juncture is conviction, either after trial or . . . by plea, at which point the state acquires the power to punish and the Eighth Amendment is implicated"). We are persuaded by the logic of those cases. Accordingly, we conclude that the *Sandin* analysis applies to Plaintiff's due process claims.

Under *Sandin*, a prisoner possesses a liberty interest under the federal constitution when a change occurs in confinement that imposes an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." 515 U.S. at 484, 115 S.Ct. 2293. In this case, Plaintiff has failed to establish a liberty interest protected by the Constitution. That is so because Plaintiff has not alleged that his confinement, whether administrative or disciplinary, presented "the type of atypical, significant deprivation [that] might conceivably create a liberty interest." *Id.* at 486, 115 S.Ct. 2293. The Court in *Sandin* relied on three factors in determining that the plaintiff possessed no liberty interest in avoiding disciplinary segregation: (1) disciplinary segregation was essentially the same as discretionary forms of segregation; (2) a comparison between the plaintiff's confinement and conditions in the general population showed that the plaintiff suffered no "major disruption in his environment"; and (3) the length of the plaintiff's sentence was not affected. *Id.* at 486–87, 115 S.Ct. 2293.

Here, there is no allegation that Plaintiff's segregation in the SHU was materially different from those conditions imposed on inmates in purely discretionary segregation. Nor is there an allegation that the conditions in the SHU, compared with conditions in the general population, created "a major disruption" in Plaintiff's environment.[3] Finally, there is no allegation that the length of Plaintiff's sentence was affected.

In sum, so far as we know from his complaint, Plaintiff's placement and retention in the SHU were "within the range of confinement to be normally expected" by prison inmates "in relation to the ordinary incidents of prison life." *Id.* at 486–87, 115 S.Ct. 2293. Therefore, we conclude that Plaintiff had no protected liberty interest in being free from confinement in the SHU pending his disciplinary hearing. That be-

---

**3.** Plaintiff alleged that, in the SHU, recreational opportunities and access to showers are limited; the mattress is flat and dirty; no pillow is allowed; a prisoner cannot have access to the library; and half the time the food is cold. He did not allege that conditions were different in administrative segregation, nor did he allege the extent to which conditions were better in the general population.

ing so, Plaintiff has no cognizable due process claim. Likewise, because Plaintiff had no protected liberty interest in not being confined in the SHU, he fails to state a Fourth Amendment claim.

## 2. *Retaliation*

In essence, Plaintiff claims that Defendants delayed his hearing and thereby kept him confined in the SHU in retaliation for his refusal to provide them with information regarding correctional officers who were bringing drugs into the prison. "Since *Sandin,* this court has reaffirmed that prisoners may still base retaliation claims on harms that would not raise due process concerns." *Hines v. Gomez,* 108 F.3d 265, 269 (9th Cir.1997).

In *Hines,* the prisoner "alleged Pearson's false charge infringed his First Amendment right to file prison grievances.... [T]he injury asserted is the retaliatory accusation's chilling effect on Hines' First Amendment rights." *Id.* In the present case, the complaint contains no similar allegation.

To be sure, Plaintiff claims that prison officials postponed a disciplinary hearing in retaliation for silence, but he does not go on to allege an infringement of the "right to file prison grievances," nor does he allege a "chilling effect." *Id.* To the contrary, Plaintiff promptly contested the charge against him, and he won. His sole allegation of harm is: "Warden Hayes order[ed] Mr. Myers *to postpone Plaintiff['s] hearing causeing* [sic] a due process violation and other constitutional rights and privilege[s] to be violated." (Emphasis added.) His entire claim for damages rests on the concept of a *delay in scheduling* the hearing and is *measured per day* for the time spent in the SHU until the hearing that vindicated his position. The First Amendment is not mentioned in the complaint.

In a constitutional tort, as in any other, a plaintiff must allege that the defendant's actions caused him some injury.

*See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 285–87, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). According to the pleaded facts, Plaintiff did not snitch, and Defendants did not identify him as a snitch and thereby place him at risk of physical harm at the hands of other prisoners. Further, despite the alleged threat of permanent placement in the SHU, Plaintiff also alleges that he was released from the SHU upon being cleared of the charge after a hearing. And, as discussed above, merely being in the SHU was not a violation of Plaintiff's due process rights. Moreover, Plaintiff has not alleged that he suffered emotional or physical harm as a result of Defendants' alleged delaying actions. Finally, Plaintiff has not alleged that his First Amendment rights have been chilled or infringed. Accordingly, we hold that Plaintiff has failed to state an actionable retaliation claim.

## CONCLUSION

For the foregoing reasons, the decision of the district court is AFFIRMED.