**Carl D. MCQUILLION, Plaintiff–Appellant,**

v.

**S. MCKENZIE, Correctional Officer; F. Mann, Correctional Officer; J. Dorough, Correctional Sergeant; E.A. Robbins, Correctional Lieutenant; A.P. Kane, Correctional Captain; A. Hogan, Correctional Officer, individually and in their official capacities, Defendants–Appellees.**

No. 00–15505.

D.C. No. CV–97–0859 GEB (DAD).

United States Court of Appeals, Ninth Circuit.

Submitted April 12, 2002.*

Decided May 16, 2002.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed.

R.App. P. 34(a)(2).

Before SCHROEDER, Chief Judge, B. FLETCHER and KOZINSKI, Circuit Judges.

## MEMORANDUM**

Plaintiff-petitioner Carl D. McQuillion appeals *pro se* a summary judgment on his

** This disposition is not appropriate for publi- cation and may not be cited to or by the

claims that Defendant–Appellees S. McKenzie, F. Mann, J. Dorough, E.A. Robbins, A.P. Kane, and A. Hogan violated his civil rights under 42 U.S.C. § 1983. McQuillion alleges that he was the victim of unlawful harassment and retaliation due to his role as Executive Chairman of the Inmate Advisory Council ("IAC") at the California Medical Facility ("CMF") in Vacaville, California. The district court entered summary judgment *sua sponte* against all claims raised below, including claims of racial conspiracy under 42 U.S.C. §§ 1985 and 1986. McQuillion abandons the racial conspiracy claims on appeal.

This Court has jurisdiction to hear appeals from final judgments pursuant to 28 U.S.C. § 1291. Because the facts are familiar to the parties, we recount them only as necessary to explain our decision.

## I

We review the district court's order granting summary judgment *de novo*. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir.2001); *Robi v. Reed*, 173 F.3d 736, 739 (9th Cir.1999). A district court may grant an order of summary judgment *sua sponte* "when 1) no material dispute of fact exists, and 2) the losing party has had an adequate opportunity to address the issues involved, including adequate time to develop any facts necessary to oppose summary judgment." *Fuller v. City of Oakland*, 47 F.3d 1522, 1533 (9th Cir.1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In reviewing summary judgment, "we must determine, viewing the facts in the light most favorable to the non-moving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law."

*Fuller*, 47 F.3d at 1534; *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995).

## II

A plaintiff may bring a claim of retaliation for the exercise of his First Amendment rights under 42 U.S.C. § 1983. *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 283–84, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). "A prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." *Barnett v. Centoni*, 31 F.3d 813, 815–16 (9th Cir.1994) (per curiam). Accordingly, a prisoner retains those First Amendment rights that are "not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system," *Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir.2001) (internal quotation marks and citation omitted). The district court concluded that McQuillion failed to raise a single, genuine factual issue on the basis of which a jury could infer that the defendants' actions did not serve legitimate penological interests. We reverse this ruling with respect to claims against defendants Hogan and Mann.

According to the state regulations governing the IAC, McQuillion, as its chairman, was chiefly responsible for "provid[ing] inmates of the institution with representation and a voice in administrative deliberations and decisions affecting the welfare and best interest of all inmates." CDC Operations Manual 53120.2. In addition, the IAC serves in a limited capacity in the collection and administration of prisoner grievances at CMF (i.e.,

courts of this Circuit except as may be provided by Ninth Circuit Rule 36–3.

**550**

the IAC serves to identify and remand to the warden grievances "of concern to the general inmate population"). CDC Operations Manual 53120.6. McQuillion's service as IAC chairman is protected activity under the First Amendment. *See Bradley v. Hall,* 64 F.3d 1276, 1279 (9th Cir.1995).

■ There is no dispute that the defendants were aware of McQuillion's status as chair of the IAC during the period when the alleged unlawful conduct occurred. McQuillion has made several allegations in the affidavits supporting his motion for summary judgment that the defendants harbored discriminatory motivations against members of the IAC and against him in particular for his role in that organization. In addition, "timing can properly be considered as circumstantial evidence of retaliatory intent." *Pratt v. Rowland,* 65 F.3d 802, 808 (9th Cir.1995). As an initial matter, McQuillion has satisfied his burden of advancing allegations with supporting evidence that he was targeted for retaliation on the basis of his participation in a constitutionally protected activity. *Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. 568.

In *Superintendent v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), the Supreme Court held that if there is even "some evidence" to support the prison's disciplinary decision, the requirements of due process are satisfied, *id.* at 455, 105 S.Ct. 2768. We have adopted that standard for disciplinary actions taken by a prison review board, *see, e.g., Barnett,* 31 F.3d at 816, but we distinguish situations where an individual guard or guards are alleged to have filed false disciplinary charges against a prisoner, *Hines v. Gomez,* 108 F.3d 265, 268–69 (9th Cir.1997). Contrary to the appellees' assertions, in such situations, a "correctional officer's accusation is not entitled to the 'some evidence' standard of review that we afford

disciplinary administrative decisions." *Id.* at 269.

■ We agree that the district court properly entered summary judgment on the section 1983 claim for defendant Robbins, who acted as a hearing officer. The fact that Robbins' disciplinary conviction of McQuillion was later overturned by the warden does not establish that Robbins did not have some evidence to support his conclusion that disciplinary action against McQuillion served a legitimate penological interest. However, none of McQuillion's other claims involve conduct subject to the "some evidence" standard.

■ McQuillion alleges that both defendants Dorough and McKenzie filed false disciplinary reports against him arising out of an altercation that took place at the IAC office on June 14, 1996. During that altercation, Dorough was summoned to the IAC office to investigate a dispute between McQuillion and McKenzie, and was subsequently shown a copy of a memorandum stored in IAC files, in which McQuillion had criticized McKenzie as racist and unprofessional on the basis of prior, unrelated conduct. The CDC Operations Manual forbids a prisoner from taking a prison employee's actions to a higher authority under the auspices of the IAC. In addition, McQuillion violated prison protocols by keeping a copy of the memorandum in IAC files as well as by showing it to individual guards. McQuillion does not dispute this representation of the June 14 events. Based on the evidence read in a light most favorable to McQuillion, both Dorough and McKenzie had a rich and concrete basis to believe that McQuillion had broken prison security rules both by retaining and disclosing the complaint memorandum. Therefore, we affirm the district court's order of summary judgment for these two defendants.

■ McQuillion's section 1983 claim against defendant Mann arises out of two

counseling chronos (or administrative warnings) issued on February 20, 1996: first, for alleged misrepresentation and misuse of a prison telephone and, second, for allegedly attempting to manipulate defendant Mann following a body search by threatening to report Mann to another official. Because McQuillion disputes that he misrepresented his identity over the telephone, that he had no right to use that phone, and that he made statements that could be construed as an attempt to manipulate Mann, each of these disciplinary charges turns upon disputed issues of material fact. We therefore reverse the district court's order of summary judgment for defendant Mann. *Hines,* 108 F.3d at 268–69.

Similarly, McQuillion's section 1983 claim against defendant Hogan turn upon a factual dispute regarding the events immediately preceding the defendant's filing of a counseling chrono against McQuillion on July 24, 1996. Accordingly, we reverse the district court's order of summary judgment in favor of defendant Hogan. *Id.*

We uphold the order of summary judgment on McQuillion's section 1983 claim against defendant Kane. This claim is based on allegations (1) that Kane failed to assist McQuillion in filing of administrative grievances against guards at CMF and (2) that Kane ordered another prison officer to issue two rules violations against him for the misuse and appropriation of state property. McQuillion has failed to establish that Kane had an affirmative duty to aid McQuillion in the filing of grievances against other prison officers. In addition, no evidence in the record supports the conclusion that Kane's order that rules violations be issued against McQuillion lacked any reasonable relationship to a penological interest. *Prison Legal News,* 238 F.3d at 1149. Therefore, we hold that McQuillion has failed to raise a genuine issue of material fact regarding whether Kane has engaged in any conduct that might be construed to chill McQuillion's exercise of his First Amendment Rights. *Mt. Healthy,* 429 U.S. at 283–84, 97 S.Ct. 568.

Finally, we note that McQuillion has conceded on appeal his claims of racial conspiracy. 42 U.S.C. §§ 1985, 1986. McQuillion states in his opening brief that he "did not allege that the conspiracy to 'chill' his First Amendment rights was racially premised," and he "submits that the invidiously discriminatory animus in this case is that created by defendants' status as prison officials/staff versus the status of the plaintiff as an inmate on an inmate council." (Pl.'s Opening Br. at 14.) Accordingly, we will not review the district court's order of summary judgment regarding his racial conspiracy claims.

AFFIRMED IN PART, REVERSED IN PART.