**WESTERN PACIFIC KRAFT, INC., a California corporation, Plaintiff,**

v.

**DURO BAG MANUFACTURING COMPANY, Defendant.**

Case No. CV 10–06017 DDP (SSx).

United States District Court, C.D. California.

May 24, 2011.

Jennifer Sabrina Elkayam, Maxwell M. Blecher, Blecher and Collins PC, Los Angeles, CA, for Plaintiff.

Carol M. Silberberg, Christopher D. Dusseault, Gibson Dunn and Crutcher LLP, Los Angeles, CA, Kevin W. Alexander, Marshall S. Brenner, Gordon & Rees LLP, San Diego, CA, for Defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

DEAN D. PREGERSON, District Judge.

Presently before the court is Defendant Duro Bag Manufacturing Company ("Duro")'s Motion to Dismiss. After reviewing the parties' moving papers and hearing oral argument, the court denies the motion and adopts the following order.

### I. Background

Plaintiff Western Pacific Kraft, Inc, ("WPK") is a wholesaler of paper bag products to other, smaller wholesale distributors. (First Amended Complaint ("FAC" ¶ 3).) Defendant Duro is the largest manufacturer of paper bags in the country and the largest seller of paper bags in California. (*Id.* ¶ 4.) Duro is both WPK's supplier and principal competitor. (*Id.* ¶ 5.)

Over the past twenty years, WPK customers would occasionally inform WPK that paper bag products could be obtained from other sources at lower prices. (*Id.* ¶¶ 6, 8.) In such situations, Duro authorized WPK to issue "debit memos," which reduced the price Duro charged WPK and allowed WPK to lower prices for its customers. (*Id.* ¶¶ 9–10.)

On October 9, 2010, Duro informed WPK that Duro would no longer authorize debit memos. (*Id.* ¶ 12.) Duro raised the price it charged WPK, while lowering the price it charged WPK's customers. (*Id.* at

18.) WPK became aware of Duro's low-price offers to WPK customers when those customers asked WPK to match Duro's prices. (*Id.* ¶¶ 15–16.) WPK alleges that Duro decreased the price charged to WPK customers through the use of secret rebates and allowances on terms unavailable and undisclosed to WPK. (*Id.* ¶¶ 20, 38–41.)

WPK sought a price quote from another manufacturer, AJM Packaging Corporation ("AJM"). (*Id.* ¶ 24.) Though WPK never discussed its inquiry with Duro, Duro contacted WPK the following day to inquire about WPK's discussions with AJM. (*Id.* ¶ 26.) WPK never received a price quote from AJM. (*Id.* ¶ 27.)

WPK's customers began buying directly from Duro, effectively putting WPK out of business. (*Id.* ¶ 28.) WPK brought suit against Duro in this court, alleging that Duro injured WPK and destroyed competition by providing secret rebates, refunds, or discounts to WPK customers, in violation of California Business and Professions Code § 17045. (*Id.* ¶ 34.) Duro now moves to dismiss.

## II. Legal Standard

A complaint will survive a motion to dismiss when it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." *Resnick v. Hayes,* 213 F.3d 443, 447 (9th Cir.2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 129 S.Ct. at 1949.

Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." *Id.* at 1950. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. *Id.* at 1949 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id.* at 1950. Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." *Twombly,* 550 U.S. at 555–56, 127 S.Ct. 1955. "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 129 S.Ct. at 1950.

## III. Discussion

 California Business and Professions Code § 17045 states:

> The secret payment or allowance of rebates, refunds, commissions, or unearned discounts, whether in the form of money or otherwise, or secretly extending to certain purchasers special services or privileges not extended to all purchasers purchasing upon like terms and conditions, to the injury of a competitor and where such payment or allowance tends to destroy competition, is unlawful.

Section 17045 must be liberally construed. *Diesel Elec. Sales & Serv., Inc. v. Marco Marine San Diego, Inc.,* 16 Cal.App.4th 202, 212, 20 Cal.Rptr.2d 62 (1993). To show a violation, a plaintiff must prove 1) a secret allowance of an unearned discount,

2) injury to a competitor, and 3) a tendency that the allowance will destroy competition. *Id.*

■ Duro first argues that the FAC does not plead facts sufficient to show that Duro offered secret rebates to its (and WPK's former) customers. (Opposition at 8.) Duro suggests that because it disclosed its intention to cease authorizing debit memos, Duro's conduct could not have been secret. (*Id.* at 9.) The court disagrees. WPK alleges a "price squeeze," in which Duro exerted anticompetitive pressure on WPK by 1) raising net prices charged to WPK and 2) lowering net prices charged to WPK's former customers. (FAC ¶¶ 37–38.) The fact that Duro disclosed one jaw of the alleged vise, the increase in net price due to the cessation of debit memos, has no bearing on whether the other jaw, the lower prices attributable to secret rebates, was a secret. The FAC clearly alleges that these rebates were never disclosed to WPK, the general public, or to the industry in general. (FAC ¶ 40.)

The court also rejects Duro's assertion that the rebates were not secret because WPK had knowledge of the prices Duro was charging. (Opp. at 9.) Duro correctly argues that the secrecy element cannot be met where the "essential terms of a rebate or unearned discount are known to the plaintiffs and the public." *Eddins v. Redstone*, 134 Cal.App.4th 290, 335, 35 Cal. Rptr.3d 863 (2005). Here, however, there is no evidence that WPK or the public knows the "essential terms" of the rebates. The only reason WPK had any inkling of Duro's newly lowered prices was that WPK customers, before shifting their business to Duro, asked WPK to meet Duro's new prices. Unlike the defendant in *Lorenzo v. Qualcomm Inc.*, 603 F.Supp.2d 1291 (S.D.Cal.2009), Duro never made any public announcement of its intention to provide any kind of discount. At this stage, prior to discovery, WPK cannot be expected to possess or plead details of the rebate scheme, particularly where that scheme is secret by nature. Construing the facts in the light most favorable to WPK, the FAC satisfies the secrecy element of a Section 17045 claim.

■ Duro also contends that the FAC fails to establish that WPK was harmed by secret rebates. (Opp. at 10.) According to Duro, the FAC only alleges harm attributable to the change in Duro's debit memo policy, and not to secret rebates. (*Id.*) The court disagrees. The FAC is quite clear that "[a]s a result of the rebates ... virtually all of Plaintiff WPK's major customers began buying paper products directly from Defendant Duro. Plaintiff WPK was effectively run out of business as a result of Defendant Duro's discriminatory pricing." (FAC ¶ 28.) The FAC also alleges that WPK tried, and failed, to obtain an alternate source of supply. (*Id.* ¶¶ 24–27). The FAC's factual allegations are sufficient to establish that the secret rebate program harmed WPK.

Defendant Duro also suggests that discriminatory rebates could not, as a matter of law, possibly have harmed WPK because, even if WPK had access to the rebate rates, it would not be able to resell Duro products to smaller distributors at a profit. (Opp. at 11.) While this argument may carry some weight at later stages of litigation, there is no evidence on the record at this stage that WPK would necessarily have lost customers to Duro, been unable to acquire new customers, or have been driven out of business had it had access to Duro's lower rebate prices.

■ The court also disagrees with Duro's assertion that WPK has failed to plead facts sufficient to establish that the secret rebates tend to destroy competition. Under Section 17045, "[c]ompetition is competition, whether among retailers,

wholesalers or producers." *ABC Int'l Traders, Inc. v. Matsushita Elec. Corp.,* 14 Cal.4th 1247, 1262, 61 Cal.Rptr.2d 112, 931 P.2d 290 (1997). "[W]here one competitor is given a major pricing advantage over another competitor, such pricing discrimination has an inherent tendency to destroy competition." *Diesel Elec.,* 16 Cal.App.4th at 213–14, 20 Cal.Rptr.2d 62. WPK has adequately pled that Duro enjoyed a major pricing advantage, and has thus satisfied Section 17045's requirement that a secret rebate tend to harm competition.

## IV. Conclusion

For the reasons set forth above, the Motion to Dismiss is DENIED.

IT IS SO ORDERED.