Randy **DAVIES**, Plaintiff,

v.

R. **VALDES**, et al., Defendants.

No. CV04–1116ABC(SS).

United States District Court, C.D. California.

Nov. 1, 2006.

Plaintiff in pro per, present whereabouts unknown (see n. 4).

All Defendants by Deputy Attorney General Gregory Marcot, California Department of Justice, San Diego.

## ORDER ADOPTING FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE

COLLINS, District Judge.

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Complaint, all the records and files herein and the Report and Recommendation of the United States Magistrate Judge. The time for filing Objections to the Report and Recommendation has passed and no Objections have been received. Accordingly, the Court accepts and adopts the findings, conclusions and recommendations of the Magistrate Judge.

**IT IS ORDERED** that Judgment shall be entered dismissing the 42 U.S.C. § 1983 claims with prejudice, and dismissing the state law claims without prejudice.

**IT IS FURTHER ORDERED** that the Clerk serve copies of this Order and the Judgment herein on Plaintiff and counsel for Defendants.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE DEFENDANTS' MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

SEGAL, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Audrey B.

Collins, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 01–13 of the United States District Court for the Central District of California.

## PROCEEDINGS

On February 19, 2004, Plaintiff, proceeding *pro se*, lodged a civil rights Complaint (the "Complaint") pursuant to 42 U.S.C. § 1983. The Complaint was filed on February 24, 2004, after the Court granted Plaintiff's request to proceed *in forma pauperis*. By Order issued on March 31, 2004, the Court directed service of process by the United States Marshal on the following parties named in the Complaint: (1) R. Valdes; (2) A. Roman; (3) M. Brownell; (4) G. Oyas; (5) M. Poulos; (6) G. Garcia; (7) C. Welch; (8) R. Moore; (9) T. Aberra; (10) M. Martel; (11) M. Norris; and (12) R. Feigen (collectively, the "Defendants"). At all relevant times, Defendants were correctional staff at the California Rehabilitation Center in Norco or the California Institution for Men in Chico, institutions where the events giving rise to Plaintiff's claims occurred.

On October 29, 2004, Defendants filed an unenumerated Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b), for failure to exhaust administrative

remedies.[1] Plaintiff submitted an Opposition on January 18, 2005, and Defendants filed a Reply on January 19, 2005. The Court denied the Motion to Dismiss on September 12, 2005.

■ On June 26, 2006, subsequent to the United States Supreme Court's decision in *Woodford v. Ngo*,[2] Defendants filed a second unenumerated Motion to Dismiss (the "Motion"), again pursuant to Federal Rule of Civil Procedure 12(b), for failure to exhaust administrative remedies. In the alternative, Defendants asserted that they are entitled to summary judgment pursuant to Federal Rule of Civil Procedure 56.[3] In addition to the Motion, Defendants filed a Memorandum of Points and Authorities (the "Memorandum" or "Memo"), a Request for Judicial Notice in support of the Motion, a Separate Statement of Uncontroverted Facts and Conclusions of Law (the "Motion, Statement of Facts"), and five supporting declarations. Plaintiff did not file an Opposition to the Motion.[4] This matter is now ready for adjudication. For the reasons stated below, it is recommended that the Motion be GRANTED.

## ALLEGATIONS OF THE COMPLAINT

Plaintiff states that he was appointed as a "Men's Advisory Committee Representa-

---

1. Defendants re-noticed their Rule 12(b) Motion on November 2, 2004 in order to include Defendant Aberra, who had been omitted from the original Notice of Motion.

2. *Woodford v. Ngo*, 548 U.S. ——, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006).

3. Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the Court in an order filed on June 29, 2006. *Klingele v. Eikenberry*, 849 F.2d 409, 411–12 (9th Cir.1988) (as amended).

4. On July 11, 2006, Defendants filed a document entitled "Notice Re Returned Service of Motion to Dismiss and For Summary Judgment." In this document, Defendants in-

formed the Court that Defendants attempted to serve their Motion on Plaintiff at his last known address, but the Motion and related documents were returned to Defendants on June 30, 2006, with a note that Plaintiff had been paroled. Plaintiff has failed to advise either Defendants or this Court of any new address and has, in fact, not communicated with this Court since receiving parole. The Court notes that, when no opposition to a motion for summary judgment is filed and when the moving papers themselves are sufficient to show that no genuine issue of fact exists, the Court may grant summary judgment. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir.1993).

tive" at the California Rehabilitation Center ("CRC") in December 2002. (Complaint, ¶ 18). His role in this capacity was to provide fellow inmates with assistance or information concerning CRC's rules, regulations, and operations. (Complaint, ¶ 19).

According to Plaintiff, several inmates approached him in May 2003 with complaints that CRC correctional staff were "exposing" sensitive information about convicted sex offenders at CRC to the general inmate population. (Complaint, ¶ 21). On May 15, 2003, Plaintiff submitted a "CDC 602" form to the CRC administration in an attempt to have this matter investigated.[5] (Complaint, ¶ 22).

According to Plaintiff, Defendant Valdes searched and verbally threatened him in retaliation for his administrative grievance on June 11 and 28, 2003. (Complaint, ¶¶ 23–30). He further alleges that Valdes placed him in mechanical restraints and escorted him to a holding area without explanation on June 29, 2003. (Complaint, ¶¶ 31–36). Plaintiff claims that he was next confronted with a "long black screw/ nail with black electrical tape wrapped around one end" that Valdes purportedly found protruding from his locker. (Complaint, ¶ 37). Plaintiff denied that the nail was his, but Defendants Roman and Valdes nevertheless authorized a "Rule Violation Report" for possession of an inmate-manufactured weapon. (Complaint, ¶¶ 38–45). Plaintiff states that he was then subjected to an unauthorized drug/ urine test and transferred to the California Institution for Men ("CIM"), where he was placed in administrative segregation. (Complaint, ¶¶ 46–50).

Plaintiff appeared before Defendant Oyas for administrative review of his alleged offense. (Complaint, ¶ 51). During this review, Plaintiff contested the charges and noted that he had reason to believe that Valdes planted the object in question in retaliation for Plaintiff's grievance regarding the disclosure of information about sex offenders at CRC. (Complaint, ¶¶ 52–53). After Plaintiff stated his intention to present certain witnesses at his forthcoming disciplinary hearing, Oyas allegedly told him that "the weapons charge was just a vehicle to get rid of [him] and to set an example for other [inmate representatives] who may try to cause trouble in the future." (Complaint, ¶¶ 54–59). Plaintiff claims that Oyas then noted in writing that he had not requested any witnesses. (Complaint, ¶ 60).

Plaintiff subsequently appeared before Defendants Poulos, Garcia, Welch, Moore, and Aberra, all of whom he describes as "Institutional Classification Committee" members. (Complaint, ¶ 63). He reiterated what he had told Defendant Oyas, including his request for witnesses. (Complaint, ¶¶ 64–66). Defendant Poulos reportedly denied Plaintiff's request based on Oyas's earlier notation. (Complaint, ¶ 67).

Plaintiff's disciplinary hearing was conducted by Defendant Brownell on July 10, 2003. (Complaint, ¶ 69). Plaintiff was found guilty of possession of an inmate manufactured weapon and disciplined accordingly. (Complaint, ¶¶ 79–80). This finding was reviewed and approved by Defendants Oyas and Poulos. (Complaint, ¶ 80). In a further proceeding, Defendants Poulos, Martel, Welch, Norris, and Aberra affirmed the result of Plaintiff's hearing. (Complaint, ¶¶ 82–90). Plaintiff's punishment included an eight month term in a secure housing unit at Corcoran State Prison and a 360–day forfeiture of

---

**5.** CDC Form 602 is entitled "Inmate/Parolee Appeal Form" and is used by prisoners to file a grievance with prison staff. Cal.Code Regs. tit. 15, § 3084.2(a).

worktime credits. (Complaint, ¶¶ 68, 77, 90, 92).

Based on their alleged retaliatory conduct, Plaintiff asserts violations of the First and Fourth Amendments as well as a state law claim of harassment against Defendants Valdes and Roman. (Complaint, ¶¶ 96–99). Against all remaining Defendants, Plaintiff asserts federal claims of due process and retaliation and state claims of negligence, harassment, and false imprisonment. (Complaint, ¶¶ 100–103). He seeks both compensatory and punitive damages. Defendants are sued only in their individual capacities. (Complaint, ¶¶ 5–16).

## DEFENDANTS' CONTENTIONS

Defendants state that on June 29, 2003, Defendant Valdes searched Dormitory Number 203 after an inmate, whose bed and locker are next to Plaintiff's, had been caught with marijuana. (Motion, Statement of Facts at 4). During the search, Defendant Valdes found an "inmate manufactured" stabbing weapon under Plaintiff's locker. (Motion, Statement of Facts at 4; Valdes Decl., ¶¶ 3–11). Defendant Valdes then located Plaintiff and, for safety reasons based upon the weapon, placed him in mechanical restraints and escorted him to Defendant Roman's office. (Motion, Statement of Facts at 4). Due to the nature of the alleged violation, Plaintiff was transferred to the Administrative Segregation Unit ("ASU") located at the California Institution for Men ("CIM"). (Motion, Statement of Facts at 4).

Prior to being transferred, Plaintiff was ordered to take an urinalysis test. (Motion, Statement of Facts at 4). The order was based on the fact that an inmate manufactured weapon had been found under Plaintiff's locker and because the inmate assigned to a neighboring bunk was found in possession of marijuana. (Motion, Statement of Facts at 5).

Defendant Valdes prepared a Crime/Incident Report and Supplement, and a Rules Violation Report ("RVR") documenting the circumstances of Plaintiff's violation and charging him with possession of an inmate manufactured weapon. (Motion, Statement of Facts at 5). The RVR was based on the fact that Defendant Valdes found the inmate manufactured weapon in Plaintiff's possession. (Motion, Statement of Facts at 5).

On June 30, 2003, Plaintiff appeared before Defendant Oyas for an ASU Placement Hearing. (Motion, Statement of Facts at 5). Plaintiff did not request that any witnesses appear at the hearing. (Motion, Statement of Facts at 5). Based on the report that Plaintiff possessed an inmate manufactured weapon, Defendant Oyas determined that it was in the best interests of the safety and security of the institution for Plaintiff to remain in the ASU until a formal Housing Review Hearing could be held. (Motion, Statement of Facts at 6). Defendant Poulos independently reviewed and authorized this decision. (Motion, Statement of Facts at 6). Defendants assert that both the initial decision and the decision following review were not made in retaliation for Plaintiff's prior administrative appeal against prison staff, but were instead based upon Plaintiff's possession of a weapon. (Motion, Statement of Facts at 6).

On July 2, 2003, Plaintiff appeared before the Institutional Classifications Committee ("ICC") for an Initial Housing Review Hearing to determine whether he should remain housed in the ASU pending the hearing on the RVR. (Motion, Statement of Facts at 6). Plaintiff again did not request that any witnesses testify on his behalf. (Motion, Statement of Facts at 6). Based on the allegation of weapon possession, the ICC found that Plaintiff posed a reasonable risk to the safety and security

of the institution and determined that he should remain in the ASU pending the hearing on the RVR and a subsequent Post–Disciplinary Review Hearing before the ICC. (Motion, Statement of Facts at 7). Defendants again state that this decision was not made in retaliation for Plaintiff's prior administrative appeal against prison staff. (Motion, Statement of Facts at 7).

On July 10, 2003, Plaintiff appeared before Defendant Brownell for a hearing on the RVR. (Motion, Statement of Facts at 7). Once more, Plaintiff did not request for any witnesses to testify on his behalf. (Motion, Statement of Facts at 7). Defendant Brownell found Plaintiff guilty of possession of an inmate manufactured stabbing weapon. (Motion, Statement of Facts at 7). Defendants Oyas and Poulos independently reviewed and approved this decision. (Motion, Statement of Facts at 8). Defendants note that Plaintiff was punished in accordance with the Disciplinary Credit Forfeiture Schedule in the California Code of Regulations and not in retaliation for his prior administrative appeal. (Motion, Statement of Facts at 8–9).

On July 30, 2003, Plaintiff appeared before the ICC for a Post–Disciplinary Review and Assessment Review for a Special Housing Unit ("SHU") Term.[6] (Motion, Statement of Facts at 9). Because Plaintiff was found guilty of possessing an inmate manufactured weapon, the ICC found that Plaintiff posed a reasonable risk to the safety and security of the prison, and, thus, determined that he should be housed in the SHU for an eight month period. (Motion, Statement of Facts at 9). Defendants state that this decision was not made in retaliation for Plaintiff's prior administrative appeal against prison staff. (Motion, Statement of Facts at 9).

On February 10, 2004, Plaintiff was transferred to the California Men's Colony ("CMC"). (Motion, Statement of Facts at 9–10). On September 19, 2005, he was released on parole. (Motion, Statement of Facts at 9–10).

## DISCUSSION

To state a claim under Section 1983, Plaintiff must show that (1) a defendant's actions occurred under color of state law and (2) the actions resulted in a deprivation of a constitutional or a federal statutory right. *See McDade v. West,* 223 F.3d 1135, 1139 (9th Cir.2000); *see also Kirtley v. Rainey,* 326 F.3d 1088, 1092 (9th Cir. 2003) ("A [section] 1983 plaintiff must demonstrate a deprivation of a right secured by the Constitution or laws of the United States, and that the defendant acted under color of state law.") (citation omitted).

In their Motion, Defendants assert that the Petition should be dismissed because, following the recent United States Supreme Court decision in *Woodford v. Ngo,* 548 U.S. ——, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006), Petitioner did not properly exhaust his administrative remedies prior to commencing this action. In the alternative, Defendants contend that they are entitled to summary judgment. Specifically, they argue that: (1) Plaintiff cannot establish a due process violation because his due process claims were procedurally defective and because the administrative disciplinary decisions were supported by sufficient evidence; and (2) Plaintiff cannot establish his retaliation claims because allegations of verbal threats and harsh language are not sufficient to state a retaliation claim and Plaintiff cannot establish that any of the Defendants conspired to retaliate against

---

**6.** The SHU is the most secure housing area within an institution and is designed to pro- vide maximum security. (Poulos Dec. ¶ 12).

him. (Memo at i-ii, 10–18). Defendants further assert that, notwithstanding these arguments, they are entitled to summary judgment because they are entitled to qualified immunity. (Memo at ii, 19).

With regard to Plaintiff's state law claims, Defendants contend that summary judgment is appropriate because Plaintiff has not complied with the presentation requirement of the California Tort Claims Act, there is no cause of action for "harassment" under California law, and Plaintiff has failed to state a claim for both negligence and false imprisonment. (Memo at ii, 21–24). As discussed below, the Court concludes that Defendants are entitled to judgment on all claims.[7]

### A. Summary Judgment Standards

The Federal Rules of Civil Procedure provide that a movant's entitlement to summary judgment hinges on whether or not the evidence viewed in the light most favorable to the nonmoving party, contains genuine issues of material fact.[8] *See Adams v. Synthes Spine Co., LP*, 298 F.3d 1114, 1116–17 (9th Cir.2002) (citations omitted). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its initial burden, Federal Rule of Civil Procedure 56(e)

requires the nonmoving party to go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (finding that an issue is genuine if the evidence shows that a reasonable jury could return a verdict for the nonmoving party). Rule 56(e) provides that, if the nonmoving party does not respond in such fashion, summary judgment, if appropriate, shall be entered against the nonmoving party. *See* Fed.R.Civ.P. 56(e). Summary judgment should be granted when there is no genuine issue of material fact, and when the moving party is entitled to judgment as a matter of law. *See Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir.2003) (citing Fed.R.Civ.P. 56(c)).

### B. Defendants Are Entitled to Summary Judgment on Plaintiff's Due Process Claims

Plaintiff claims that his due process rights were violated when Defendants Oyas and Brownell did not document his request for witnesses and allowed him to be retained in the Administrative Segregation Unit ("ASU") without evidence to support the charges. (Complaint, ¶¶ 100–01). He further alleges that Defendants Poulos, Garcia, Welch, Moore, Martel, Norris, Aberra, and Feigen violated his right to

---

**7.** On September 12, 2005, this Court denied Defendants' first Motion to Dismiss on exhaustion grounds. The Court found that because prison officials did not return his informal complaints, which were required to be submitted as part of all subsequent formal levels of review, Plaintiff completed all the levels of review that were available to him. Defendants now assert that in light of the recent Supreme Court case *Woodford v. Ngo*, 548 U.S. ——, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) Plaintiff did not exhaust his administrative remedies. (Memo at 8). In *Ngo*, the Supreme Court held that a prisoner does not satisfy the PRLA administrative exhaus-

tion requirement by filing an untimely or otherwise procedurally defective administrative appeal. *Ngo*, 126 S.Ct. at 2382. Because the Court finds that summary judgment should be granted to Defendants on the merits, it does not reach the issue of exhaustion.

**8.** Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c).

due process by failing to overturn Plaintiff's disciplinary hearing conviction and by transferring him to the Security Housing Unit ("SHU"). (Complaint, ¶ 102). Because Plaintiff's due process rights were not violated, as discussed below, Defendants are entitled to summary judgment on these claims.

### 1. The Disciplinary Hearing Did Not Violate Plaintiff's Due Process Rights

Plaintiff argues that Defendants Oyas, Brownell, Poulos, Garcia, Welch, Moore, Martel, Norris, Aberra, and Feigen violated his due process rights because there was insufficient evidence to support his disciplinary conviction and because his repeated requests to call witnesses were denied. (Complaint, ¶¶ 100–02).

■■■ The decision of a prison disciplinary board does not violate due process if it is supported by "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) (holding "some evidence" standard applicable to decisions to revoke sentence credits) (citation omitted); *Toussaint v. McCarthy*, 801 F.2d 1080, 1105 (9th Cir.1986) (applying "some evidence" standard to decision to place prisoner in administrative segregation), *cert. denied*, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987). This standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Hill*, 472 U.S. at 455, 105 S.Ct. 2768. Rather, it is satisfied if there is "any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455–56, 105 S.Ct. 2768. The evidence must contain some indicia of reliability. *See Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir.1987) (as amended).

■■■ The decision of Defendant Brownell in the Rules Violation Report, Defendant Oyas' approval of the Rules Violation Report, the decision of Defendants Garcia, Welch, Moore, Aberra, and Norris as a part of the Institutional Classification Committee ("ICC"), and the subsequent approval of the ICC's decision by Defendants Feigen, Martel, and Poulos, are all supported by "some evidence." On June 29, 2003, Defendant Valdes completed a "Crime/Incident Report." (Valdes Decl., Ex. A). Defendant Valdes states in the report that he found a nail, approximately eight and one quarter inches long, with black electrical tape wrapped around the handle end, under Plaintiff's locker. (Valdes Decl., Ex. A at 2). Upon finding the weapon, Defendant Valdes then searched Plaintiff's locker where he found a pencil with the end wrapped in electrical tape in the same manner as the nail. (Valdes Decl., Ex. A at 2). Accordingly, there is evidence in the record supporting the disciplinary conviction and Plaintiff's confinement in the ASU and the SHU. Thus, Defendants Oyas, Brownell, Poulos, Garcia, Welch, Moore, Martel, Norris, Aberra, and Feigen's various decisions and approvals did not violate Plaintiff's due process rights. *See Hill*, 472 U.S. at 455–56, 105 S.Ct. 2768.

■■■ In addition, although the Supreme Court has held that a prisoner should be allowed to call witnesses at a disciplinary hearing where he faces the loss of sentencing credits, *Wolff*, 418 U.S. at 566, 94 S.Ct. 2963, prison officials have the discretion, within reasonable limits, to refuse to call witnesses. For example, if such testimony would be unnecessary or irrelevant, or would impose any hazards in the prison, the officials may refuse a request for witnesses. *Id.* While the Supreme Court noted that it would be useful for prison officials to state why they are not allowing a witness to testify, they did not mandate it. *Id.*

Here, Plaintiff alleged in his Complaint that, at his disciplinary hearing and the subsequent reviews, he requested that Inmates D. Butler and T. Malone be allowed to testify that Defendant Valdes planted the weapon. (Complaint, ¶¶ 53–4). Defendants contend that Plaintiff never requested any witnesses, and Defendants Brownell, Oyas, and Poulos state in their declarations that they each asked Plaintiff if he wanted to call witnesses to which Plaintiff responded that he did not. (Brownell Decl., ¶¶ 13–7; Oyas Decl., ¶¶ 15–20; Poulos Decl., ¶ 17). Plaintiff has not offered any admissible evidence, in the form of declarations or affidavits, to contradict these facts.

■ Even assuming, however, that Plaintiff did request that the above witnesses testify, his due process rights were not violated. The only issue at the disciplinary hearing was whether Plaintiff possessed a weapon. Prison officials could have reasonably concluded that calling inmate witnesses, who were not present at the time the search was conducted, would not have been helpful to this determination and refused the request. *See Wolff,* 418 U.S. at 566, 94 S.Ct. 2963 (holding that prison officials can refuse witnesses where they would be irrelevant or unnecessary). Thus, because Plaintiff has not alleged facts regarding any of the hearings that could amount to a due process violation, Defendants are entitled to summary judgment on these claims.

### 2. Plaintiff's Retention in ASU and SHU Did Not Violate Plaintiff's Due Process Rights

Plaintiff also contends that his retention in the ASU by Defendant Oyas and his transfer to the SHU for eight months by Defendants Poulos, Garcia, Welch, Moore, Martel, Norris, Aberra, and Feigen violated his due process rights. (Complaint, ¶¶ 100, 102).

The Due Process Clause protects against the deprivation of liberty without due process of law. *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Thus, to invoke the protections of the Due Process Clause, a plaintiff must first identify a liberty interest for which he seeks protection. *Wilkinson v. Austin,* 545 U.S. 209, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005). In *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court held that prisoners have liberty interests protected by the Due Process Clause only where the restraint in question " 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Sandin,* 515 U.S. at 483–84, 115 S.Ct. 2293; *see also Keenan v. Hall,* 83 F.3d 1083, 1088 (9th Cir.1996) (quoting *Sandin* ), *amended by* 135 F.3d 1318 (9th Cir.1998).

The Court in *Sandin* relied on three factors in determining that a prisoner-plaintiff possessed no liberty interest in avoiding disciplinary segregation in the SHU for thirty days: (1) disciplinary segregation essentially mirrored the conditions imposed upon inmates in administrative segregation, (2) plaintiff's confinement in disciplinary segregation "did not work a major disruption in his environment," and (3) the length of the plaintiff's sentence was not affected. *Sandin,* 515 U.S. at 486–87, 115 S.Ct. 2293; *see also Resnick v. Hayes,* 213 F.3d 443, 448 (9th Cir.2000) (as amended) (citing *Sandin* ). In addition, the Court in *Sandin* held that "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Sandin,* 515 U.S. at 485, 115 S.Ct. 2293. Moreover, the Ninth Circuit has explicitly stated that administrative segregation "falls within the terms of confinement ordinarily contemplated by a sentence." *May v. Baldwin,* 109 F.3d 557, 565 (9th Cir.1997), *cert. denied,* 522

U.S. 921, 118 S.Ct. 312, 139 L.Ed.2d 241 (1997) (citation omitted).

In California, an inmate may be placed in administrative segregation when his presence in the general population presents an immediate threat of safety to the inmate or others, endangers institutional security, or jeopardizes the integrity of an investigation into serious inmate misconduct or criminal activity. Cal.Code Regs. tit. 15, § 3335(a). The regulations require that for all segregated inmates, including those confined to the SHU for prison rule violations, confinement conditions must "approximate those of the general population." Cal.Code Regs. tit. 15, §§ 3331(a), 3343(a).

Plaintiff appeared at an ASU Placement Hearing soon after his transfer to the ASU where it was determined that, for the safety and the security of the prison and based on the allegations that Plaintiff possessed an inmate manufactured weapon, Plaintiff should be held in the ASU pending a housing review. Soon thereafter, Plaintiff appeared before the ICC for an Initial Housing Review where, for the same reasons, it was determined that he was to remain housed in the ASU pending his hearing on the RVR. (Motion, Statement of Facts at 5–6). After his disciplinary conviction for

possession of an inmate manufactured weapon, Plaintiff again appeared before the ICC for a Post–Disciplinary Review and Assessment Review. The ICC found that, based on the disciplinary conviction, Plaintiff posed a reasonable risk to the safety and security of the prison and should be housed in the SHU for an eight month period. (Motion, Statement of Facts at 9).

As discussed above, Plaintiff's disciplinary conviction is supported by sufficient evidence. Moreover, Plaintiff does not dispute that the confinement conditions of the ASU and the SHU approximated those of the general population. As Plaintiff's confinement fell within the expected parameters of Plaintiff's sentence, did not pose an atypical or significant hardship, and did not effect the length of Plaintiff's sentence, Plaintiff did not possess a liberty interest in avoiding confinement in the ASU or the SHU. *See Sandin*, 515 U.S. at 483–87, 115 S.Ct. 2293. Therefore, Plaintiff cannot demonstrate any constitutional violations arising out of his confinement in the ASU or the SHU and Defendants Oyas, Poulos, Garcia, Welch, Moore, Martel, Norris, Aberra, and Feigen are entitled to summary judgment on this claim.[9] *See Wilkinson*, 125 S.Ct. at 2393.

---

**9.** Defendants also contend that Plaintiff's due process claims are procedurally defective because they should be addressed by a writ of habeas corpus pursuant to *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) and *Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). Under *Heck* and *Balisok*, if success on a 42 U.S.C. § 1983 claim would necessarily demonstrate the invalidity of confinement or its duration, the conviction or sentence must first be overturned, invalidated, or expunged, before the § 1983 action may proceed. *Heck*, 512 U.S. at 486–87, 114 S.Ct. 2364; *Balisok*, 520 U.S. at 648, 117 S.Ct. 1584. However, *Heck* is not a bar to a Section 1983 suit where the relief sought would not necessarily invalidate the plaintiff's conviction. *See Hill v.*

*McDonough*, —— U.S. ——, 126 S.Ct. 2096, 2103, 165 L.Ed.2d 44 (2006). In addition, where habeas relief is no longer available to address a prisoner's claims, a Section 1983 action is not barred by *Heck*. *Nonnette v. Small*, 316 F.3d 872, 876 (9th Cir.2002), *cert. denied*, 540 U.S. 1218, 124 S.Ct. 1503, 158 L.Ed.2d 152 (2004) (*Heck* is not bar to Section 1983 action when prisoner served period of additional incarceration that resulted from revocation of good-time credits and is then paroled). Here, as Plaintiff was recently paroled, it is unclear whether *Heck* would bar his Section 1983 claims. However, because Plaintiff's claims may be resolved on other grounds, it is unnecessary for the Court to address Defendants' *Heck* arguments.

### C. Defendants Are Entitled to Summary Judgment on Plaintiff's Claims of Retaliation

Plaintiff next contends that Defendants' actions were taken in retaliation for the administrative grievances he filed against prison staff. (Complaint, ¶¶ 23–30, 54–59, 99–102). Specifically, he asserts that Defendant Valdes verbally threatened him and filed "false" charges of possession of an inmate manufactured weapon, and Valdes knew such charges were false. (Complaint, ¶ 96). He further claims Defendant Roman knowingly approved the allegedly false charges. (Complaint, ¶ 45). Plaintiff next contends he was retaliated against by Defendant Brownell who found him guilty of possessing an inmate manufactured weapon and Defendant Oyas who approved the disciplinary conviction and had Plaintiff retained in the ASU. (Complaint, ¶¶ 100–01). Finally, Plaintiff asserts that Defendants Poulos, Garcia, Welch, Moore, Martel, Norris, Aberra, and Feigen retaliated against Plaintiff by not overturning his disciplinary conviction and by having him transferred to the SHU. (Complaint, ¶ 102).

 It is "established beyond doubt that prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). Because the prison grievance provides the inmate his gateway into court, "[t]he right of meaningful access to the courts extends to established prison grievance procedures." *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir.1995) (citation omitted). Thus, a claim of retaliation for filing a prison grievance "raises constitutional questions beyond the due process deprivation of liberty." *See Austin v. Terhune*, 367 F.3d 1167, 1170 (9th Cir.2004).

The Supreme Court recently held that a Section 1983 retaliation claim requires the plaintiff to show that the defendant acted with retaliatory animus and lacked probable cause to take the allegedly retaliatory action. *Hartman v. Moore*, ─── U.S. ───, 126 S.Ct. 1695, 1702–03, 1707, 164 L.Ed.2d 441 (2006). The Ninth Circuit set forth requirements for a Section 1983 retaliation claim in *Rhodes v. Robinson*, 408 F.3d 559 (9th Cir.2005):

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*See Rhodes* at 567–68 (footnote omitted) (citing *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir.2000) and *Barnett v. Centoni*, 31 F.3d 813, 815–16 (9th Cir.1994)). These cases require that the prisoner submit evidence linking the alleged retaliation to the exercise of a constitutional right. *See Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir.1995).

 Furthermore, "[c]hallenges to restrictions of first amendment rights must be analyzed in terms of the legitimate policies and goals of the correctional institution in the preservation of internal order and discipline, maintenance of institutional security, and rehabilitation of prisoners." *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir.1985) (citing *Procunier v. Martinez*, 416 U.S. 396, 412, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974) and *Storseth v. Spellman*, 654 F.2d 1349 (9th Cir.1981)). The plaintiff bears the burden of establishing that there was no legitimate penological purpose motivating the actions of which he complains. *See Pratt*, 65 F.3d at 808.

 In this case, Plaintiff cannot establish a claim for retaliation under either the Ninth Circuit or the U.S. Supreme

Court standard. Plaintiff bases his retaliation claim on statements allegedly made by defendants that the weapon possession charges were fabricated in response to the administrative appeals he filed against prison staff. However, Defendants Valdes states in his declaration that he was unaware of Plaintiff's prior complaints until the present action because the complaints did not involve him personally. (Valdes Decl., ¶ 21). He further declares that he found the inmate manufactured weapon in Plaintiff's possession. (Valdes Decl., ¶¶ 22–23). Defendant Poulos states in his declaration that he was also unaware of Plaintiff's prior administrative appeals until the present action. (Poulos Decl., ¶ 15). Defendant Oyas states in his declaration that he never made statements indicating that the charges against Plaintiff were fraudulent. (Oyas Decl., ¶ 22). Rather, he contends that his decision was based on Defendant Valdes' report that an inmate manufactured weapon was found under Plaintiff's locker, and that he had no reason to doubt the veracity of the report. (Oyas Decl., ¶¶ 22–23). All Defendants deny that their actions were in retaliation for Plaintiff's prior grievances and Plaintiff failed to submit any evidence to controvert these statements. (See Valdes. Decl., ¶¶ 22–23; Poulos Decl. ¶¶ 15, 19, 22); (Oyas Decl., ¶ 27).

■ Plaintiff has not offered any evidence to support his bare statements that the weapon was planted. Thus, in light of the reports and declarations submitted by Defendants indicating that their actions were done in response to finding an inmate manufactured weapon in Plaintiff's possession, and the absence of any evidence from Plaintiff to controvert these facts, Plaintiff

has failed to meet his burden of demonstrating that Defendants' actions were not motivated by a legitimate penological goal, i.e., the safety and security of the prison. Accordingly, Plaintiff cannot establish a retaliation claim against Defendants for their respective roles in Plaintiff's disciplinary conviction and transfer. See Rhodes, 408 F.3d at 567–68; Hartman, 126 S.Ct. at 1702–03, 1707.[10] Defendants are therefore entitled to summary judgment on these claims.

### D. The Urine Test Did Not Violate Plaintiff's Fourth Amendment Right to Privacy

■ Plaintiff also claims that Defendant Valdes subjected Plaintiff to a urine test without provocation in violation of his Fourth Amendment right to privacy. (Complaint, ¶ 97). A urine test is a "search" for Fourth Amendment purposes. Skinner v. Railway Labor Executives' Assn., 489 U.S. 602, 617, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989).

In Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Supreme Court held that "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." Hudson, 468 U.S. at 526, 104 S.Ct. 3194. The Ninth Circuit has nevertheless recognized that prisoners do retain limited rights to bodily privacy under the Fourth Amendment. Michenfelder v. Sumner, 860 F.2d 328, 333 (9th Cir.1988) ("We recognize that in-

---

10. In addition, Plaintiff's allegation that Defendant Valdes retaliated against Plaintiff by verbally threatening him fails because verbal threats do not rise to the level of a constitutional violation. See Keenan, 83 F.3d at 1092 (verbal harassment generally does not violate the Eighth Amendment) (citation omitted); Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) (threats do not constitute a constitutional wrong).

carcerated prisoners retain a limited right to bodily privacy."); *see also Thompson v. Souza,* 111 F.3d 694, 699 (9th Cir.1997) ("Notwithstanding the language in *Hudson,* our circuit has held that the Fourth Amendment right of people to be secure against unreasonable searches and seizures 'extends to incarcerated prisoners; however, the reasonableness of a particular search is determined by reference to the prison context.'") (citing *Michenfelder*); *Jordan v. Gardner,* 986 F.2d 1521, 1524 (9th Cir.1993) (en banc) ("The Fourth Amendment guarantees the right of the people to be secure against unreasonable searches, and its protections are not extinguished upon incarceration.") (citing *Michenfelder*).

In this case, Defendant Valdes states that the only reason he required Plaintiff to submit to a urine test was because he "had discovered contraband in [Plaintiff's] possession while [Defendant Valdes] was performing a legitimate search for drug paraphernalia near the vicinity of [Plaintiff's] bed area." (Valdes Decl., ¶ 23). Considering that Plaintiff was found in possession of a weapon and that his bed was next to the bed of an inmate found with marijuana, and that the prison has a legitimate interest in attempting to curb drug use, requiring Plaintiff to submit to a urine test was reasonable. *See e.g., Thompson,* 111 F.3d at 701–03 (finding urinalysis of the plaintiff was not harassment even where plaintiff was selected for testing based on his cell-mate's prior drug violations). Accordingly, Defendant Valdes is entitled to summary judgment on this claim.

### E. The Court Need Not Determine Whether Defendants Are Entitled To Qualified Immunity

Defendants also contend that they are entitled to qualified immunity with respect to Plaintiff's Section 1983 claims against them. (*See* Memo at 19–21). However, it is unnecessary for the Court to resolve the issue of qualified immunity.

When the defense of qualified immunity is raised, "the first inquiry must be whether a constitutional right would have been violated on the facts alleged." *See Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *see also San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose,* 402 F.3d 962, 971 (9th Cir.2005) (citing *Saucier*), *cert. denied sub. nom. Linderman v. San Jose Charter of Hells Angels Motorcycle Club,* —— U.S. ——, 126 S.Ct. 796, 163 L.Ed.2d 627 (2005), *Decena v. San Jose Charter of Hells Angels Motorcycle Club,* —— U.S. ——, 126 S.Ct. 796, 163 L.Ed.2d 627 (2005). If a violation can be made out on a favorable view of plaintiff's submissions, the next sequential step is to examine whether the right was clearly established such that a reasonable official would understand that her conduct was unlawful in the situation she confronted. *Saucier,* 533 U.S. at 201–02, 121 S.Ct. 2151; *see also San Jose Charter,* 402 F.3d at 971 (citing *Saucier*). As the Court has concluded that Plaintiff's allegations have failed to state a constitutional violation, it is unnecessary for the Court to reach the defense of qualified immunity.

### F. The Court Should Decline To Exercise Supplemental Jurisdiction Over Plaintiff's State Law Tort Claim

Finally, Plaintiff alleges a state law claim of harassment against Defendants Valdes and Roman, and state law claims of harassment, negligence, and false imprisonment against Defendants Oyas, Brownell, Poulos, Garcia, Welch, Moore, Martel, Norris, Aberra, and Feigen. (Complaint, ¶¶ 98, 103). As the Court has original jurisdiction over Plaintiff's Section 1983 claim, it may exercise supplemental juris-

diction over his related state law claims. 28 U.S.C. § 1367(a); *Acri v. Varian Assocs., Inc.,* 114 F.3d 999, 1000 (9th Cir.1997). The Court, however, has the power to decline supplemental jurisdiction over state law claims if (1) the claims raise novel or complex issues of state law, (2) the claims substantially predominate over the claims over which the Court has original jurisdiction, or (3) the Court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c); *Acri,* 114 F.3d at 1000 (citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *see also Gibbs,* 383 U.S. at 726, 86 S.Ct. 1130 ("if the federal claims are dismissed before trial ... the state claims should be dismissed as well"). Thus, in view of the Court's conclusion that Plaintiff's Section 1983 claims should be dismissed, the Court should decline to exercise jurisdiction over Plaintiff's state law tort claims.[11] *McKinney v. Carey,* 311 F.3d 1198, 1201 n. 2 (9th Cir.2002) (citations omitted) (district court appropriately declined to exercise supplemental jurisdiction over state claims where federal claims were dismissed on motion to dismiss).

### RECOMMENDATION

Consistent with the foregoing, IT IS RECOMMENDED that the District Court issue an Order: (1) accepting and adopting this Report and Recommendation; (2) granting Defendants' Motion for Summary Judgment; (3) dismissing the Complaint with prejudice as to Plaintiff's Section 1983 claims; and (4) dismissing the Complaint without prejudice as to Plaintiff's state law claims.

October 6, 2006.

---

11. The Defendants contend that Plaintiff has not complied with the presentation requirement of the California Tort Claims Act, there is no cause of action for "harassment" under California law, and Plaintiff has failed to state a claim for both negligence and false imprisonment. Given the Court's decision not to exercise jurisdiction over the state claim, the Court need not reach these arguments.